**Paul GUERRERO, Individually and as Representative of Raymond Guerrero, Appellants,**

v.

**HARMON TANK CO., INC., Appellee.**

**No. 07–00–0402–CV.**

Court of Appeals of Texas, Amarillo.

April 27, 2001.

Fadduol, Glasheen & Valles, Kevin Glasheen, Jeffrey Cluff, Lubbock, for appellants.

Jones, Flygare, Galey, Brown & Wharton, G. Douglas Welch, John P. Levick, Lubbock, for appellee.

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

BOYD, Chief Justice.

In this appeal, appellants Paul and Raymond Guerrero challenge a take-nothing summary judgment in their suit against appellee Harmon Tank Co., Inc. In the suit, appellants sought recovery for personal injuries Raymond suffered while working on a tank owned by appellee. For reasons we later recount, we affirm the judgment of the trial court.

In the summer of 1999, Raymond was a welder employed by Staffing Solutions, Inc., which was in the business of supplying temporary employees to other businesses. In response to a request from Harmon for a welder, Raymond and other employees of Staffing Solutions were assigned to Harmon on a continuing basis for a period of several months. On June 22, 1999, at about 10:00 a.m., Raymond was working on a tank and was injured by an explosion apparently caused by a leak in his gas welding equipment.

Guerrero's son Paul, acting in his individual capacity and as representative of his father, filed suit against Harmon at 3:00 p.m. on the day of the injury. In the suit, it was alleged that Raymond's injuries were caused by Harmon's negligence and gross negligence. Harmon answered the suit and, about 30 days after filing its answer, moved for summary judgment on the grounds that it was not liable in the capacity in which it was sued because it was either Raymond's co-employer under the Staff Leasing Services Act, Tex. Labor Code Ann. §§ 91.001–.017 (Vernon 1995 & Supp.2001) (the Act), or because it controlled the nature and details of his work, it was his employer under the borrowed servant doctrine. In support of this proposition, Harmon provided the affidavit of its President, Loy McGee. McGee averred that at the time of the accident, Raymond had been a leased employee for some eight months. He further averred that at no time during Raymond's employment with Harmon had any employee or agent of Staffing Solutions exerted any control over any aspect of Raymond's work and both Harmon and Staffing Solutions "were covered by policies of workers' compensation insurance." Thus, Harmon reasons, either by virtue of the Act, it was Raymond's co-employer with Staffing Solutions, or under the borrowed servant doctrine, it was his employer. In either event, it contends, and because the uncontroverted evidence shows that both Harmon and Staffing Solutions were subscribers to the workers' compensation system, the exclusive remedy provisions of the workers' compensation system are applicable to bar the Guerreros' common law claims. *See* Tex. Labor Code Ann. § 408.00 (Vernon 1996).

In a letter to the parties, the trial judge concluded that because it had never actually obtained a license under the Act, Staffing Solutions was not a staff leasing company within the purview of the Act which,

in the trial court's view, precluded Harmon's status as a co-employer under the Act. However, the judge opined the borrowed servant doctrine was applicable, which entitled Harmon to claim the exclusive remedy provisions of section 406.001(a) of the Workers' Compensation Act. We note that although the trial court stated that conclusion in its letter, the judgment actually signed by him did not state the basis for the court's judgment.

As we have noted, Paul brings this appeal in his individual capacity and as representative for his father, Raymond. We have before, and will continue to, use the name Guerrero to refer to both appellants. In pursuing their appeal, they raise two issues, both of which concern Harmon's right to summary judgment because of the exclusive remedy provisions of the workers' compensation act. In their first issue, they ask whether Harmon was a co-employer under the Staff Leasing Services Act. In their second issue, they question Harmon's status under the borrowed servant doctrine.

To be entitled to summary judgment, a movant must show there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); Tex.R. Civ. P. 166a. In reviewing a summary judgment, we must take evidence favorable to the non-movant as true and indulge every reasonable inference in its favor. *Nixon*, 690 S.W.2d at 548. Inasmuch as the order granting summary judgment in this case did not state the grounds upon which it was granted, we must affirm it if any of the grounds asserted in Harmon's motion were meritorious. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

The Staff Leasing Services Act is codified in Chapter 91 of the Texas Labor Code. Tex. Labor Code Ann. §§ 91.001–.063 (Vernon 1996 & Supp.2001). It defines "staff leasing services" as an arrangement in which employees of a license holder under the Act are provided to a "client company" on a long term or continuing basis and in which employment responsibilities are shared by the license holder and the client company. Tex. Labor Code Ann. § 191.001(14) (Vernon Supp.2001).

The Act authorizes license holders to participate in workers' compensation insurance and, if they do so, defines the license holder and client company as "co-employers" for purposes of workers' compensation. Section 91.042(c). It imposes several requirements on licensees. Section 91.012–.017. Sections 91.011 and 91.061 prohibit a person from providing staff leasing activities unless they hold a license under the chapter. Section 91.063 establishes criminal penalties for providing staff leasing services without a license. As noted above, it is undisputed that Staffing Solutions did not hold a license under the Act.

In their first issue, the Guerreros ask us to determine whether the failure of Staffing Solutions to have a license precludes Harmon's reliance on the co-employer provisions of the Act. In their second issue, they ask us to determine if the trial court erred in determining Harmon was entitled to the exclusive remedy provisions of the Texas workers' compensation law as Raymond's employer under common law borrowed servant doctrine.

In *Texas Workers' Compensation Ins. Fund v. Del Industrial, Inc.*, 35 S.W.3d 591 (Tex.2000), our supreme court recently considered the interplay between the Staff Leasing Act and the workers' compensation law. That case concerned a client company's liability for workers' compensation premiums for leased workers. The

court opined that the statute gave license holders "the exclusive right to elect whether to obtain workers' compensation coverage for the leased employees." *Id.* at 594. Thus, it concluded, "[u]nder the Act, the staff leasing company holds the exclusive right to **elect or deny** workers' compensation coverage for assigned employees" (emphasis added). *Id.* at 596. Consequently, the court held, the client company had no liability for premiums for leased employees. *Id.*[1] En route to its conclusion, the court also noted the Act "statutorily supersedes the common-law right-of-control test in determining employer status of leased employees for workers' compensation coverage purposes" and that the traditional rule prohibiting an employer from providing workers' compensation benefits to some employees but not for others did not apply in the leased employee context. *Id.*

Thus, the Act authorizes "license holders" to participate in the workers' compensation system and, if they do so, the Act defines the license holder and the client company as "co-employers" for purposes of workers' compensation. Section 91.042(c). It imposes several requirements on licensees. Sections 91.012–017. As we noted, sections 91.011 and 91.061 prohibit a person from providing staff leasing services unless they hold a license under the chapter. Section 91.063 establishes criminal penalties for providing staff leasing services without a license. The fact that Staffing Solutions has not actually obtained a license under the Act gives rise to the Guerreros' first issue, in which they ask us to determine if the failure of Staffing Solutions to obtain a license precludes Harmon's reliance on the co-employer provisions of the Act.

As is obvious, a proper discussion of this issue requires us to construe the statute. It is well established that the purpose of statutory construction is always to determine legislative intent. *Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 438 (Tex.1997); *Scolaro v. State ex rel. Jones,* 1 S.W.3d 749, 755 (Tex.App.—Amarillo 1999, no pet.). We also consider the object sought to be attained and the consequences of a particular construction. *Ashworth,* 943 S.W.2d at 438. Courts must take statutes as they find them and must find a statute's intent in its language and not elsewhere. *RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985). Additionally, every word in a statute must be presumed to have been used for a purpose and every word excluded for a purpose. *Cameron v. Terrell & Garrett,* 618 S.W.2d 535, 540 (Tex.1981).

Section 91.011 of the Act provides:

A person may not engage in or offer staff leasing services in this state unless the person holds a license issued under this chapter.

The ensuing sections of the Act describe the moral, educational, and financial requirements required to obtain a license under the Act. They also provide for a required background investigation and define disciplinary actions that may be pursued for violations of proper conduct under the statute and various other obligations required under the statute. Sections 91.012–.049. Each of the sections refer to "license holders." Sections 91.061–91.063 are entitled "Prohibited Acts, Penalty." As relevant here, those sections prohibit a person from engaging in "staff leasing ser-

---

1. The *Del Industrial* court specifically stated that it did not consider nor decide the question whether a client company could be contractually obligated under its contract with the leasing company to provide workers' compensation insurance for the leased employees. 35 S.W.3d at 594, n. 1.

vices" without obtaining a license, section 91.061(1), that if notified of a violation of the Act, the attorney general may seek *quo warranto* relief from a district court in Travis County, section 91.062, and a person who violated section 91.061 commits a Class A Misdemeanor, section 91.063. Parenthetically, the Act provides that if the "license holder" maintains workers' compensation insurance, it will pay premiums based upon the experience rating of the client company for the first two years of its contract with the leasing company. *See* section 91.042(b).

■ It is obvious that the legislature intended the Act to apply to all persons (entities) engaging in staff leasing activities and that it was intended both to regulate those activities and to protect the public and persons dealing with firms engaged in such activities by ensuring they were solvent and operated by persons of good moral character. It was for the purpose of ensuring that all companies engaged in those activities, that sections 91.061–.063, the penalty provisions, were included.

In their argument, the Guerreros agree that "the SLSA regulates all staff licensing companies, whether licensed or not" and that the Act "supersedes the borrowed servant doctrine in all instances involving leased employees." They acknowledge that the Act offers "certain benefits to license holders and their client companies, including workers' compensation immunity to client companies when the license holder has obtained workers' compensation insurance." However, to extend the benefits of the Act "to those companies which illegally offer staff leasing services without being licensed and thereby, their client companies," the Guerreros contend, would be an absurd result. They reason that to do so would be to allow a situation where a staff leasing company who had not quali-

fied as a "license holder" to pay workers' compensation premiums based upon its own experience rating, whereas a "license holder" under the Act would be required to pay premiums based upon the experience rating of a client company. Paradoxically, the Guerreros argue that although the Act supersedes the common law borrowed servant doctrine, the part of the Act that says the client company and the staff leasing company are co-employers for workers' compensation purposes is not applicable. These positions are inconsistent. Either the Act applies in its entirety or it does not.

While the use of the term "license holder" throughout much of the Act is somewhat confusing, if the Act is applicable in superseding the borrowed servant doctrine, it is equally applicable in its definition of a co-employer which, under this record, would include Harmon. Because it is uncontroverted that Staffing Solutions had workers' compensation insurance, and Raymond had never given either Harmon or Staffing Solutions the requisite notice of intent to retain common law rights, Harmon would be entitled to the exclusive remedy provisions of the Workers' Compensation Act.

If, on the other hand, because of Staffing Solutions' failure to obtain a license under the Act it does not apply and regulate the relations between Harmon and Staffing Solutions, the borrowed servant doctrine would not have been superseded. That doctrine would still be available to Harmon if it shows it met the doctrine's requirements. Because it is undisputed in this record that Harmon was a subscriber to workers' compensation insurance, it would then be entitled to the exclusive remedy provisions of the Workers' Compensation Act.

■ Under the borrowed servant or special employee doctrine, an employee of

a general employer may become the special employee of another employer, if the other employer has the right of control. *Esquivel v. Mapelli Meat Packing Company,* 932 S.W.2d 612, 614 (Tex.App.—San Antonio 1996, writ denied), *citing Sparger v. Worley Hospital, Inc.,* 547 S.W.2d 582, 583 (Tex.1977). The right of control is important because the employer who has control would be exempted from common-law liability if it was a subscriber to workers' compensation insurance. *Regalado v. H.E. Butt Grocery Co.,* 863 S.W.2d 107, 111 (Tex.App.—San Antonio 1993, no writ). The right of control is determined by examining the nature of the general project, the nature of the work to be performed by the furnished employee, and the length of the special employment. The direction of the details and manner of work determines which employer has the required "right of control" of a borrowed servant and the most significant factor in determining which employer controlled is who controlled the very transaction out of which the injury arose. *Hilgenberg v. Elam,* 145 Tex. 437, 198 S.W.2d 94, 95 (1946); *Esquivel,* 932 S.W.2d at 614–15.

Under this record, it is uncontroverted that at the time of the accident, Raymond was working on a Harmon project and Harmon had the right of control over his welding activities. It is also uncontroverted that Harmon had a workers' compensation policy. A borrowed servant is properly covered by the borrowing employer's workers' compensation insurance. *Process Engineering Co. v. Rosson,* 287 S.W.2d 511, 512 (Tex.Civ.App.—Galveston 1956, no writ). Thus, regardless of whether the Act applies, the trial court's judgment would be correct. Accordingly, neither of the Guerreros' issues present reversible error in the trial court's judgment.

In summary, because neither of the Guerreros' issues reveal reversible error, they are both overruled and the judgment of the trial court is affirmed.