In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-472 CV


____________________



CLAY FLETCHER, Appellant



V.



SAWYER CRYSTAL SYSTEMS, INC., Appellee






On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 00-08-05349-CV






O P I N I O N


 Clay Fletcher filed suit against Sawyer Crystal Systems, Inc. for injuries received
while working on the premises. Fletcher's petition asserts he was an employee of Express
Personal Services as a Polish Machine Operator and was an invitee of Sawyer at the time
of the injury. Sawyer moved for summary judgment on the sole basis that under the
"borrowed servant" doctrine, Fletcher's exclusive remedy is the recovery of workers'
compensation benefits. The trial court granted summary judgment in favor of Sawyer. 
Fletcher appeals claiming the trial court erred because there are genuine issues of material
fact precluding a determination as a matter of law that he was the borrowed servant of
Sawyer.

 No evidence was adduced at the hearing on the motion for summary judgment. The
only evidence attached to Fletcher's response to Sawyer's motion for summary judgment
is his affidavit. Fletcher avers he was hired by Express and subsequently instructed by
Express to meet with Beverly Lindsey, Personnel Supervisor at Express, to discuss the
possibility of an assignment at Sawyer. Fletcher met with Lindsey at her office located on-site at Sawyer. Lindsey administered various employment materials and IQ-type tests. A
few days later, Lindsey contacted Fletcher to inform him that he had been assigned to
Sawyer as a Polish Machine Operator. Lindsey informed Fletcher of his start date, set his
hours, and set his pay rate. Lindsey instructed Fletcher to contact her if there were any
problems or questions regarding his assignment. Fletcher was told to contact Lindsey if
he ever needed to call in sick, or if there were any other scheduling problems. During
Fletcher's assignment at Sawyer, Lindsey was present on-site daily and would look in on
him regularly. On more than one occasion, Lindsey commented on Fletcher's job
performance. Lindsey delivered Fletcher's paychecks, which were always drawn on an
Express account. Fletcher stated during the assignment he rarely, if ever, dealt with
anyone from Sawyer. His hours were pre-determined by Express and he clocked in and
out using Sawyer's automated scanning system. Fletcher's breaks and lunches were on a
pre-set schedule. No one from Sawyer controlled his schedule. According to Fletcher,
at all relevant times he perceived Express as his employer because he received all of his
orders directly from Express and was actually told by Lindsey that he was an employee of
Express. Express made it clear to Fletcher that at any point in time, Express could transfer
him to another assignment, terminate his assignment, or terminate his employment all
together.

 Attached as evidence to Sawyer's motion are four exhibits. Exhibit 1 is the affidavit
of Beverly Lindsey, Personnel Supervisor at Express. According to Lindsey, Fletcher was
assigned to Sawyer as a co-employee and 

 Sawyer supervisors, not [Express], directed Mr. Fletcher's work for Sawyer. 
I sometimes worked on Sawyer's premises in the fall of 1999, but I only
handled human resources and administrative functions, such as timecards,
payroll and medical benefits. Neither I nor any other [Express] employees
directed Mr. Fletcher's job duties or work performance.


 Exhibit 2 is the affidavit of Edward J. Griffith, Human Resources Manager for
Sawyer. Griffith averred

 Express and Sawyer do not have a written contract, but as part of the
arrangement between Sawyer and [Express], Sawyer requires that [Express]
provide workers' compensation insurance for all employees provided to
Sawyer. Customarily, when [Express] provides employees to Sawyer,
Sawyer supervises those employees, instructs them in their work duties, and
generally ensures that their work performance is adequate. [Express] merely
handles administrative functions, such as payroll, benefits processing and the
like.


 Exhibit 3 is the affidavit of Barbara Thomas, the Manufacturing Supervisor at
Sawyer. In her position, she 

 had occasion to work with Clay Fletcher. Clay worked in the Polish
department that I supervise. . . . As a Manufacturing Supervisor, I made
sure that Clay performed his work duties properly. I instructed him about
how to operate the equipment he used, the amount of time he should spend
performing certain task, where he would work and when, and was available
to answer any questions he might have. I also instructed him on when to
take breaks. On December 7, 1999, I was in the same work area as Clay
and was supervising his work. [Express] did not perform supervisory
functions. Although [Express] did have an administrative employee on the
Sawyer premises, they did not have managers or employees on site who
worked in manufacturing or oversaw the work performance of any employee
on Sawyer's premises. Either I or another Sawyer supervisor always
oversaw Clay's job performance.


 Exhibit 4 is the affidavit of Linda Hill, Manger of Workers' Compensation. Hill's
affidavit provides that as part of its arrangement with Sawyer, Express was required to
maintain workers' compensation insurance at all times for all employees assigned to
Sawyer. Fletcher was covered by workers' compensation insurance which Express paid
for in part using fees paid by Sawyer. Fletcher filed a claim under that policy and received
benefits.

 We first note the Supreme Court of Texas has long recognized "[t]he right of
control is ordinarily a question of fact." Sparger v. Worley Hospital, Inc., 547 S.W.2d
582, 583 (Tex. 1977). In the recent case of Faust v. Pumpco, Inc., 57 S.W.3d 620, 623
(Tex. App.--Texarkana 2001, pet. denied), the court noted:

 Several factors are to be considered in determining who has power and
control over the employee: the nature of the general project, the nature of
the work to be performed by the machinery and employees furnished, the
length of the special employment, the type of machinery furnished, the acts
representing an exercise of actual control, and the right to substitute another
operator of the machinery. Producers Chem. Co. v. McKay, 366 S.W.2d
220, 226 (Tex.1963). An additional factor to be considered is any contract
language between the two parties addressing the right to control. Exxon
Corp. v. Perez, 842 S.W.2d 629, 630 (Tex.1992).


As noted above, contract language is not a factor in the present case. As to the other
factors, the summary judgment evidence attached to Sawyer's motion does not reveal:


 the nature of the general project;
 the nature of the work to be performed by the furnished employee;
 the length of the special employment; or
 the right to substitute another operator of the machinery.


From Thomas' affidavit, the acts presumably representing an exercise of actual control
are: (1)


 making sure Fletcher performed his work properly;
 instruction on how to operate the equipment;
 instruction on the amount of time to be spent performing a certain task;
 where and when Fletcher would work; and
 when Fletcher was to take breaks.


 Lindsey's affidavit states only that Sawyer's supervisors "directed" Fletcher's work. 
The only evidence from such a supervisor is Thomas' affidavit. Both affidavits are
controverted by Fletcher's affidavit. 

 Furthermore, the essential inquiry under the borrowed servant doctrine would be
whether Sawyer had the right to control Fletcher in the details of the specific act raising
the issue of liability. Sparger, 547 S.W.2d at 583. As noted by Sawyer in its brief, "[t]he
direction of the details and manner of work determines which employer has the required
'right of control' of a borrowed servant and the most significant factor in determining
which employer controlled is who controlled the very transaction out of which the injury
arose." Guerrero v. Harmon Tank Co., Inc., 55 S.W.3d 19, 25 (Tex. App.-- Amarillo
2001, pet. denied) (emphasis added).

 Fletcher's injuries were caused by a leak of hydrofluoric acid, stored and handled
by Sawyer, which exposed him to hazardous fumes. Sawyer's summary judgment
evidence does not address whether it had the right to control Fletcher "in the details of the
specific act raising the issue of liability." There is nothing in the record to suggest that
anything other than Fletcher's mere presence led to his injury. According to Fletcher, his
presence at Sawyer was controlled by Express, which had the right to assign him to
Sawyer, reassign him away from Sawyer, or even terminate his assignment. 

 For all of these reasons, we find Fletcher's affidavit raises a genuine issue of
material fact as to whether Fletcher was subject to the specific direction and control of the
loaning employer, Express, or the borrowing employer, Sawyer. See Hoffman v. Trinity
Industries, Inc., 979 S.W.2d 88, 90 (Tex. App.--Beaumont 1998, writ dism'd by agr.). 
Accordingly, the trial court erred in granting summary judgment. Point of error one is
sustained and the judgment of the trial court is REVERSED AND REMANDED.






 DON BURGESS

 Justice


Submitted on March 5, 2002

Opinion Delivered March 28, 2002

Do Not Publish 


Before Walker, C.J., Burgess and Gaultney, JJ.

DISSENTING OPINION


 I respectfully dissent. The issue raised by appellant is whether Sawyer Crystal
Systems, Inc. had "the right to control the progress, details and methods of operations"
of appellant's work. See Thompson v. Travelers Indem. Co. of Rhode Island, 789 S.W.2d
277, 278 (Tex. 1990). The facts are straightforward and beyond any real dispute. The
summary judgment evidence established not only Sawyer's right of control but also the
actual exercise of that supervision on the day of the accident. Appellant was assigned to
work for Sawyer and was injured while doing Sawyer's work under Sawyer's supervision. 
Appellant was the borrowed servant of Sawyer. The summary judgment should be
affirmed.

 _________________________________

 DAVID B. GAULTNEY

 Justice


Dissent Delivered

March 28, 2002

Do Not Publish
1. We say "presumably" because although Sawyer cites these factors in its brief, the
brief fails to correlate the factors to the summary judgment evidence.