

**NUMBER 13-08-00150-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**PORT ELEVATOR-BROWNSVILLE, L.L.C.,**                    **Appellant,**

**v.**

**ROGELIO CASADOS AND RAFAELA CASADOS,**
**INDIVIDUALLY AND AS REPRESENTATIVE OF**
**THE ESTATE OF THEIR SON, RAFAEL CASADOS,**          **Appellees.**

---

**On appeal from the 404th District Court of**
**Cameron County, Texas.**

---

# O P I N I O N

**Before Chief Justice Valdez and Justices Yañez and Vela**
**Opinion by Justice Yañez**

By a single issue, appellant, Port Elevator–Brownsville, L.L.C. ("Port Elevator"),

contends the trial court erred in denying its motion for summary judgment and in granting

the cross-motion for partial summary judgment filed by appellees, Rogelio and Rafaela Casados.[1] Specifically, Port Elevator contends that appellees' claims against it are barred by the exclusive remedy provision of the Texas Workers' Compensation Act ("TWCA").[2] We affirm.

## I. Background

Staff Force, Inc. ("Staff Force") is a temporary employment agency that hires temporary workers and assigns them to work for its client companies.[3] Rafael Casados was hired by Staff Force and assigned to work at Port Elevator's grain storage facility at the Port of Brownsville. Shortly after his assignment to Port Elevator's facility, Casados died when he was buried beneath twenty feet of grain.[4]

Appellees sued Port Elevator, Staff Force, and others for wrongful death.[5] Port Elevator filed a traditional and no-evidence motion for summary judgment. In its traditional

---

[1] Appellees, plaintiffs below, are acting individually and as representatives of their deceased son, Rafael Casados. Casados was unmarried and had no children when he died.

[2] *See* TEX. LABOR CODE ANN. §§ 406.034(a), 408.001 (Vernon 2006). Port Elevator briefed a second issue, arguing that if there is a fact question regarding whether Casados was Port Elevator's employee, the trial court erred in refusing to submit a jury question on the issue. However, the parties do not dispute that Casados was an employee of both Port Elevator and Staff Force, Inc. ("Staff Force"). In its reply brief, Port Elevator notes that we need not reach the second issue because the parties agree that Casados was Port Elevator's employee.

[3] The record reflects that Staff Force entered into a Staff Leasing Agreement with E-Z Bookkeepers, Inc. d/b/a Professional Business Solutions ("PBS") pursuant to the Staff Leasing Services Act ("SLSA"). *See id.* §§ 91.001-.063 (Vernon 2006 & Supp. 2009). Thus, with respect to PBS (the license holder), Staff Force was a "client company." *See id.* § 91.001 (3), (11) (Vernon Supp. 2009). Then, Staff Force, acting as a "general employer," provided temporary workers to its "client companies," including Port Elevator. *See Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 136 n.9 (Tex. 2003); *Western Steel Co., Inc. v. Altenburg*, 169 S.W.3d 347, 350 (Tex. App.–Corpus Christi 2005) *rev'd on other grounds,* 206 S.W.3d 121, 124 (Tex. 2006). The effect of this arrangement is that PBS, the license holder, leased Casados to Staff Force, the client company, which in turn, leased Casados to Port Elevator.

[4] The record shows that Staff Force's work order assigning Casados to Port Elevator reflects a "start date" of April 25, 2005. Casados's death occurred on April 26, 2005.

[5] The only appellant in this appeal is Port Elevator.

2

motion, Port Elevator argued that: (1) Casados was Port Elevator's employee; (2) at the time of Casados's death, Port Elevator was a subscriber to workers' compensation insurance; and (3) appellees' claims are therefore barred by the exclusive remedy provision of the workers' compensation statute. Port Elevator also argued that appellees are barred from recovering exemplary damages because they are not "within the defined class of beneficiaries who may recover exemplary damages" under the statute.[6] As summary judgment evidence, Port Elevator attached: (1) the affidavit of its general manager, Craig Elkins; (2) the declarations page of its insurance policy; and (3) excerpts from the deposition testimony of its employee, Javier Saldivar. In its second supplemental motion, Port Elevator provided a complete copy of its insurance policy. Port Elevator also argued that appellees' claims were barred because Staff Force's workers' compensation carrier paid all available benefits.[7]

In the no-evidence section of its motion, Port Elevator argued that the Texas Department of Insurance, Division of Workers' Compensation has exclusive jurisdiction to determine compensability and there is "no evidence that [appellees] have exhausted their administrative remedies as required."

Appellees filed a response to Port Elevator's motion and a cross-motion for partial summary judgment on Port Elevator's affirmative defenses. In their traditional and no-

---

[6] *See* TEX. LABOR CODE ANN. § 408.001(b) (Vernon 2006) ("This section does not prohibit the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's 'gross negligence.'").

[7] Port Elevator references exhibits attached to Staff Force's "Plea to Jurisdiction and Motion to Dismiss or Abate," which are included in the record before us. Those documents purportedly show that Dallas Fire Insurance Company ("Dallas Fire"), PBS's workers' compensation carrier, paid $56,238.00 to the subsequent injury fund of the Division of Workers' Compensation because Casados had no legal beneficiaries. *See id.* § 403.007 (Vernon 2006).

3

evidence motion, appellees argued that as a temporary worker, Casados was not covered under Port Elevator's workers' compensation policy. Specifically, appellees argued that (1) the exclusive remedy provision is an affirmative defense for which Port Elevator bore the burden of proof, and (2) Port Elevator had no evidence that it paid a workers' compensation insurance premium covering Casados and other temporary employees. Appellees also argued that they were not required to exhaust their administrative remedies because they were not seeking workers' compensation benefits. As summary judgment evidence, appellees attached: (1) Port Elevator's responses to appellees' discovery requests; (2) the deposition testimony of Elkins; (3) the deposition testimony of Veronica Castro, then branch manager of Staff Force's Brownsville office; (4) a Staff Force work order reflecting Casados's classification code; (5) Casados's "First Report of Injury" form; and (6) an affidavit from appellees' attorney. Appellees filed an "Amended Motion for Partial Summary Judgment," in which they argued that the exclusive-remedy affirmative defense was not available to Port Elevator because its workers' compensation policy did not cover the temporary employees it obtained from Staff Force. Appellees also asserted that they were entitled to a no-evidence partial summary judgment because Port Elevator has no evidence that it was a subscriber to a policy that covered Casados. As additional summary judgment evidence, appellees attached: (1) Port Elevator's second supplemental responses to appellee's requests for disclosure; and (2) the deposition testimony of Ernest Stokey, a vice president of Texas Mutual Insurance Company, Port Elevator's workers' compensation carrier. Appellees and Port Elevator also filed various responses, supplemental responses, and replies, and submitted additional evidence.

The trial court denied Port Elevator's motion for summary judgment and granted

4

appellees' amended motion for partial summary judgment. A jury found Port Elevator liable for negligence and awarded appellees and Casados's estate approximately $2.7 million in damages. The trial court entered judgment on the verdict. Port Elevator filed a motion for reconsideration of the trial court's rulings on the motions for summary judgment and a motion for judgment notwithstanding the verdict, both of which the trial court denied. This appeal ensued.

## II. Standard of Review and Applicable Law

Here, both Port Elevator's motion for summary judgment and appellees' amended cross-motion for partial summary judgment were combined "traditional" and "no-evidence" motions. We review the trial court's grant of summary judgment de novo.[8] "When, as here, both parties file a motion for summary judgment with the trial court, and one is granted and one is denied, the reviewing court determines all questions presented and renders the judgment that should have been rendered by the trial court."[9] When the trial court does not specify the basis for its ruling, it is the appellant's burden on appeal to show that none of the independent grounds that were asserted in support of summary judgment is sufficient to support the judgment.[10] Thus, when the trial court's order granting summary judgment does not specify the grounds on which it was granted, we will affirm the summary judgment if any of the advanced theories support the judgment.[11]

---

[8] *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009).

[9] *HC Beck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex. 2009).

[10] *Coffey v. Singer Asset Fin. Co.*, 223 S.W.3d 559, 562-63 (Tex. App.–Dallas 2007, no pet.) (citing *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)).

[11] *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005) (citing *Provident Life Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003)); *Coffey*, 223 S.W.3d at 563.

5

As the Texas Supreme Court recently noted,

> The purpose of the Texas Workers' Compensation Act is to provide employees with certainty that their medical bills and lost wages will be covered if they are injured. An employee benefits from workers' compensation insurance because it saves the time and litigation expense inherent in proving fault in a common law tort claim. But a subscribing employer also receives a benefit because it is then entitled to assert the statutory exclusive remedy defense against the tort claims of its employees for job related injuries.[12]

The exclusive remedy provision provides that, "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . for the death of or a work-related injury sustained by the employee."[13]  When a defendant moves for summary judgment based on an affirmative defense, like the exclusive remedies provision of the TWCA, the defendant must conclusively prove each element of the defense as a matter of law.[14]  Thus, Port Elevator had the summary judgment burden of proving its exclusive-remedy affirmative defense as a matter of law.[15]  The Texas Supreme Court has recognized that temporary employees, like Casados, may have more than one employer for the purposes of the TWCA and its exclusive remedy provision.[16]  A borrowed servant is properly covered by the borrowing

---

[12] *HC Beck, Ltd.*, 284 S.W.3d at 350.

[13] *See* TEX. LABOR CODE ANN. § 408.001(a).

[14] *Funes v. Eldridge Elec. Co.,* 270 S.W.3d 666, 668 (Tex. App.–San Antonio 2008, no pet.); *Morales v. Martin Res., Inc.*, 183 S.W.3d 469, 471 (Tex. App.–Eastland 2005, no pet.); *Western Steel Co., Inc.*, 169 S.W.3d at 349.

[15] *See Morales*, 183 S.W.3d at 471.

[16] *Id.* (citing *Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 475 (Tex. 2005); *Wingfoot Enters.*, 111 S.W.3d at 144).

employer's workers' compensation insurance.[17]   Here, in order to be entitled to the exclusive-remedy affirmative defense, Port Elevator was required to plead and prove:  (1) Casados was its borrowed servant; (2) he was entitled to workers' compensation benefits; and (3) Port Elevator had workers' compensation insurance that covered claims asserted by borrowed servants.[18]

### III.  Discussion

We begin by addressing whether Port Elevator met its burden to establish its exclusive-remedy affirmative defense as a matter of law.[19]   In its motion for summary judgment and on appeal, Port Elevator argued that it was entitled to the exclusive-remedy affirmative defense because it established that:  (1) Casados was its employee (which is undisputed); and (2) at the time of Casados's death, it was a subscriber to workers' compensation insurance.  In support of its position, Port Elevator cites *Garza v. Exel Logistics, Inc.*[20]  Port Elevator argues that because "an employer may not split its workforce by providing workers' compensation insurance to some workers while leaving others without coverage," *all* of its employees—including Casados—were covered by its workers' compensation policy.  Essentially, Port Elevator's position is that if it purchased workers'

---

[17] *Guerrero v. Harmon Tank Co.*, 55 S.W.3d 19, 25 (Tex. App.–Amarillo 2001, pet. denied).

[18] *See Wesby v. Act Pipe & Supply, Inc.*, 199 S.W.3d 614, 617-18 (Tex. App.–Dallas 2006, no pet.); *Western Steel Co., Inc.*, 169 S.W.3d at 350; *Univ. of Houston–Clear Lake v. Marsh*, 981 S.W.2d 912, 914 (Tex. App.–Houston [1st Dist.] 1998, no pet.).

[19] We note that in its motion for summary judgment, Port Elevator argued that appellees had "no evidence" that appellees exhausted their administrative remedies.  Port Elevator has not raised this argument on appeal, and we do not address it.  *See* TEX. R. APP. P. 38.1(i).

[20] *See Garza*, 161 S.W.3d at 478 ("The Act does not permit a temporary employment agency like Interim to obtain coverage for a client simply by obtaining coverage for itself.  There must be explicit coverage for the client.").

compensation insurance for *one* of its employees, then *all* of its employees are covered—regardless of whether it *intended* to cover all of its employees, whether the code classifications in the policy reflect coverage for all employees, and whether it paid premiums for temporary employees like Casados.

In its response and on appeal, appellees contend that Port Elevator was required to establish not only that it was a *subscriber* to workers' compensation insurance, but that Casados was an employee *covered by* Port Elevator's policy. Thus, the controlling question before the trial court, and now before this Court, is whether Port Elevator indeed could meet its burden by establishing only that (1) Casados was its employee and (2) it was a subscriber to workers' compensation insurance.

We begin by examining Port Elevator's argument and summary judgment evidence. Port Elevator submitted the affidavit of Elkins, which stated that: (1) Port Elevator was a subscriber to workers' compensation insurance, and (2) Casados was Port Elevator's employee at the time of his death. It also submitted excerpts from the deposition testimony of Saldivar, which shows that: (1) on the day he died, Casados was removing grain from a bulkhead door; and (2) all of Port Elevator's employees—including its temporary employees—were a "necessary" part of Port Elevator's grain elevator operations. With respect to the controlling issue, Port Elevator submitted its insurance policy, issued by its carrier, Texas Mutual Insurance Company ("Texas Mutual"). The policy reflects that Port Elevator was a subscriber to workers' compensation insurance covering its operations in Texas for the relevant policy period.[21] The information page of the policy, which lists the

---

[21] The policy period is July 12, 2004 through July 12, 2005. Casados's fatal accident occurred on April 26, 2005.

classification codes describing the type of work performed by the employees, lists only two classifications: "clerical office employees" and "grain elevator operation & local managers, drivers." With regard to the information page, Port Elevator makes two arguments: (1) Casados was included in the category of employees working in support of grain elevator operations; and (2) classification codes do not establish coverage, but merely govern premium calculations.

In support of its argument that an employer may not "split" its workforce by covering some of its employees and not covering others, Port Elevator cites *Texas Workers' Compensation Insurance Fund v. Del Industrial, Inc.*,[22] *Maryland Casualty Co. v. Sullivan*,[23] and *Texas Employers' Insurance Ass'n v. Stanton*.[24]

Appellees respond that the supreme court in *Del Industrial* also recognized that the case law in this area is dated and noted that "the Texas cases prohibiting 'split workforces' do not address staff-leasing relationships, and were decided prior to the Legislature's passage of the SLSA."[25] Appellees further argue that *Sullivan* and *Stanton* are distinguishable because neither case addresses workers' compensation in the context of temporary employees.

In *Del Industrial*, the supreme court held that "the Staff Leasing Services Act does

---

[22] *Tex. Workers' Compensation Ins. Fund v. Del Industrial, Inc.*, 35 S.W.3d 591, 596 (Tex. 2000) ("It has long been the law in Texas that an employer may not split its workforce by providing workers' compensation insurance to some workers while leaving others without coverage.").

[23] *Md. Cas. Co. v. Sullivan*, 334 S.W.2d 783, 786 (Tex. 1960).

[24] *Tex. Employers' Ins. Ass'n v. Stanton*, 140 S.W.2d 337, 339 (Tex. Civ. App.–Amarillo 1940, writ ref'd).

[25] *See Del Industrial, Inc.*, 35 S.W.3d at 596 (citing TEX. LABOR CODE ANN. §§ 91.001-.063) (the SLSA).

not require a [client] company that purchases workers' compensation insurance for its employees to pay premiums for employees whom the company leases from a staff leasing company when the staff leasing company declines to purchase coverage for those leased workers."[26] Thus, in construing the provisions of the SLSA, the court permitted "the practical effect" that only part of the employer's work force (the direct non-leased-employee part) was covered by workers' compensation insurance.[27]

*Del Industrial* is distinguishable from the present case because it involved a "staff-leasing relationship" between a staff-leasing company and its client company pursuant to the SLSA.[28] In the present case, Staff Force is not a staff leasing company within the purview of the SLSA.[29] Thus, although *Del Industrial* is distinguishable from the facts before us, we recognize that it supports Port Elevator's position that non-SLSA-governed cases—like the present case—are subject to the general rule "that an employer may not split its workforce by providing workers' compensation insurance to some workers while leaving others without coverage."[30]

We next address the evidence presented by appellees. Appellees contend that Port

---

[26] *Id.*

[27] *See id.*

[28] *See id.*

[29] Neither party asserts that Staff Force is a staff leasing agency pursuant to the SLSA. Port Elevator characterizes Staff Force as a "temporary employment agency." Appellees characterize Staff Force as a "temporary staffing company." As noted, Staff Force was a "client company" under the SLSA because it entered into a staff leasing agreement with PBS. Evidence in the record shows that PBS carried workers' compensation insurance coverage for the applicable period through Dallas Fire. Staff Force was not a named insured on the Dallas Fire policy or on any other policy that appears in the record.

[30] *Del Industrial, Inc.*, 35 S.W.3d at 596.

Elevator's workers' compensation policy covered only its direct employees, not its temporary employees like Casados. Appellees argue that to establish its exclusive remedy affirmative defense, Port Elevator must show not only that it is a subscriber to workers' compensation insurance, but that Casados was "an employee *covered by* workers' compensation insurance coverage."[31]

Appellees point to the information page of Port Elevator's policy, which lists the classification codes of covered employees: "8810" for "clerical office employees" and "8304" for "grain elevator operation & local managers, drivers." Appellees assert that as a temporary laborer, Casados fit into neither category, and was therefore not covered by the policy. In support, appellees cite the deposition testimony of Elkins, who testified that Casados was a "laborer," not a "manager," an "operator," or "clerical staff." Appellees also provided Staff Force's work order assigning Casados to Port Elevator; the work order identifies Casados's workers' compensation classification code as "5160." The classification code "5160" does not appear on the information page of Port Elevator's insurance policy showing covered employees.[32]

Appellees also rely on the deposition testimony of Stokey, "vice president of premium audit and premium recovery" at Texas Mutual, Port Elevator's workers' compensation carrier. Stokey explained that his duties include "securing payroll

---

[31] *See* TEX. LABOR CODE ANN. § 408.001 (emphasis added).

[32] In its appellate brief, Port Elevator cites *Bradley v. Phillips Chem. Co.*, 484 F.Supp.2d 604, 615 (S. D. Tex. 2007), for the proposition that the code classifications do not limit coverage under the policy and cannot be used to exclude employees from coverage. However, Port Elevator did not make this argument in its motion for summary judgment or in its responses to appellees' motion. Accordingly, we do not consider it. *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

11

information from our policyholders to determine what their premiums are due [sic] based on their organization, their activity, as well as their payroll." Stokey testified, in relevant part, as follows:

Q [by appellees' counsel]: Do you know whether or not Staff Force employees were included in the calculations of Port Elevator–Brownsville, L.C.'s Workers' Comp premiums?

A [Stokey]: Yes, I know.

Q: Were they?

A: No.

Q: Should they have been, in your opinion?

A: No.

Q: Why not?

A: Because from what we—what we've seen, that Staff Force has their own Workers' Compensation policy, and we do not—that would be double charging if we had included any of those employees, and that's contrary to the labor code of regulations. We can't—

Q: What regulation?

A: We can't double charge our policyholders in the State of Texas. You'd have Staff Force being charged for premium and then I'm going to be penalizing our policyholder if we'd have done something like that, and that's not being good stewards for our policyholder's premium.

Q: Well, actually what you'd have is each company paying to cover its own employees, isn't that right?

. . . . [Objection and discussion]

A: This is not a situation, from my perspective, where someone truly is working for two different companies. I—this is an employee that's working for one company that's in a type of business. As I understand, it's a temporary agency, I believe, Staff Force is; that the normal course of duty is that they go out and work for other clients of that—of Staff Force that need someone to do whatever type of task it is. That doesn't make them an

12

employee of Port Elevator, especially in lieu of the fact that Staff Force already has their own Workers' Compensation policy.

Q: Have you analyzed Staff Force's policy?

A: No.

Q: Okay. So you don't really know whether or not they have a policy that covers Mr. Casados or not, do you?

[Objection]

A: I haven't seen it, no.

Q: You've been told that?

A: By reliable sources, I think.

Q: Who told you that?

A: It's consultation with counsel.

Q: Okay. So we're clear, Port Elevator did not pay a premium that included calculations for the payroll of Staff Force employees for 2003 through 2005, right?

A: That's correct.

. . . .

Q: Did Texas Mutual charge any premiums for Staff Force employees—let me restate that. Did Texas Mutual charge Port Elevator any premiums for Workers' Compensation for Staff Force employees after its end-of-the-year audit in 2002, 2003, 2004, or 2005?

[Objection]

A: No, it did not.

Q: Did any Staff Force employee make a Workers' Compensation claim under Port Elevator's policy in 2002?

A: No.

Q: Did any Staff Force employee make such a claim in 2003?

13

A: No.

Q: How about in 2004?

A: I believe that might be the year, the policy year where Mr. Casados' claim came into our organization. I can't remember exactly. There's only one claim from—and that's Mr. Casados'[s], and I can't recall if it was '04 or '05, but that's the only one.

Q: Okay. I believe it was '05.

A: Okay.

Q: I think it was April of '05. So I understand what you're saying, the only Workers' Compensation claim that's ever been made by a Staff Force employee on Port Elevator's Workers' Compensation policy was the claim for Mr. Casados?

A: That's correct.

Q: Who made that claim?

A: I don't know.

Q: That claim was denied, right?

A: Yes.

[Objection]

A: Yes, it was.

Q: Why was that claim denied?

A: I don't know.

Q: Certainly Port Elevator didn't pay a premium to cover any Staff Force employees, right?

[Objection]

A: No, they did not.

. . . .

14

Q: Okay. So you're certain, then, that for the years 2002 through 2005 the payroll for Staff Force was not included in the premium calculations for Port Elevator?

A: Correct.

. . . .

Q: Okay. And this would be an example where that's the payroll for Port Elevator, but does not include payroll for Staff Force employees working at Port Elevator, right?

A: Correct.

. . . .

[Objection]

A: That was—that's correct, it's not the intent.

. . . .

Stokey was cross-examined by Port Elevator's counsel as follows:

Q [by Port Elevator's counsel]: Okay. So just to use, then, that term, based upon what you can see in Exhibit 3 there, Port Elevator was a subscriber as of April 26, 2005?

A: That's correct. Yes, sir.

. . . .

On further examination by appellees' counsel, Stokey testified:

Q [by appellees' counsel]: Okay. So the term 'subscriber' doesn't define who is or who isn't covered by Workers' Comp, it just describes whether or not somebody has a Workers' Comp policy or not?

[Objection]

A: If I'm an employer and I'm a subscriber to Workers' Compensation, then my employees are covered.

Q: Well, in this instance[,] Staff Force people weren't covered, right?

15

[Objection]

A: From what I'm seeing on this—in this situation, you've got a situation where the claimant in question was not an employee of our policyholder.

Q: All right. I apologize if I've asked you some of these questions I'm about to ask you again. I just want to get them clear on the record so that we don't have to bother you again with another deposition prior to trial.

Port Elevator did not pay for Workers' Compensation insurance for Staff Force employees working at Port Elevator's facility, correct?

[Objection]

A: That's correct.

Q: And Texas Mutual did not charge Port Elevator for Workers' Compensation coverage for Staff Force employees working at Port Elevator's facility, correct?

[Objection]

A: Correct.

Q: And Texas Mutual did not intend to cover Staff Force employees under Port Elevator's Workers' Compensation policy, correct?

[Objection]

A: Correct.

. . . .

On further examination by Port Elevator's counsel, Stokey testified:

Q [by Port Elevator's counsel]: It is the intent of Texas Mutual to cover all those persons who are in an employee/employer relationship with Port Elevator during the policy period at issue?

[Objection]

A: Yes. Correct.

Appellees' summary judgment evidence also included Elkins's deposition testimony,

16

which included the following:

> Q [by appellees' counsel]:  Did you have a conversation or [sic] any sort of at Staff Force if who, if anybody, was supposed to provide worker's comp for the Staff Force employees?
>
> A [Elkins]:  Yes, I asked Staff Force all your—in the price you're charging me what's included, and they said workers' comp all of that is included in the price we're charging.
>
> Q:  So you guys didn't get workers' comp for the Staff Force employees?
>
> [Port Elevator's counsel]: Object to form.
>
> A:  At the—we have workers' comp and if Staff Force's people were not covered under Staff Force's comp then I believe my policy automatically charges me a premium based on the wages I pay Staff Force.
>
> Q:  That's what you believe?
>
> A:  That's what I believe, yes.

On further examination by Staff Force's counsel, Elkins testified:

> Q [by Staff Force's counsel]:  Now, when you had the discussion with Staff Force, the question was asked, do you have workers' compensation insurance included in this rate?
>
> A [Elkins]:  Yes, sir.
>
> Q:  All right.  And what were you told?
>
> A:  Yes, we do.
>
> Q:  Did you ask which worker's compensation carrier they had worker's comp insurance with?
>
> A:  No, we didn't.
>
> Q:  Was there any discussion that if they had worker's compensation who would be insured under the policy, being Staff Force and the client company or did you get into that explanation?
>
> A:  They didn't get into that explanation.  I just asked them for a binder.

17

Elkins testified that the "binder" he referred to reflected that the insurer was Dallas Fire. Elkins also testified that prior to Casados's death, no Port Elevator temporary employee had been injured.

Appellees also submitted a "Notice of Denial of Compensability/Liability and Refusal to Pay Benefits" form issued by Texas Mutual, Port Elevator's workers' compensation carrier. The document contains the following explanation:

> TEXAS MUTUAL INSURANCE COMPANY DENIES THE CLAIM IN ITS ENTIRETY AS NO INJURY WAS SUSTAINED WITHIN THE COURSE AND SCOPE OF EMPLOYMENT WITH OUR INSURED PORT ELEVATOR-BROWNSVILLE. MR. CASADOS'S EMPLOYER AT ALL TIMES RELEVANT TO THIS CLAIM WAS AMS STAFF LEASING, DBA STAFF FORCE INC[.,] WHICH IS NOT COVERED BY A WORKERS COMPENSATION POLICY ISSUED BY TEXAS MUTUAL INSURANCE COMPANY. PER INVESTIGATION, THE CORRECT CARRIER IS DALLAS FIRE INSURANCE COMPANY AND THE POLICY NUMBER IS DWC020005-01[.[33]]

In their "Amended Motion for Partial Summary Judgment on the Affirmative Defense of the Workers' Compensation Bar," appellees cited the supreme court's opinion in *Garza* in support of their position that Port Elevator was required to show that it was covered by a policy for an injury to Casados.[34] We agree that *Garza* supports appellees' position. In *Garza*, the supreme court held that a temporary employment agency cannot obtain workers' compensation insurance for a client simply by obtaining coverage for itself; rather, there must be explicit coverage for both employers.[35] In so holding, the court explained:

---

[33] In its "Supplemental Response to Plaintiffs' Amended Motion for Summary Judgment," Port Elevator noted that the denial statement was made by Texas Mutual, not by Port Elevator, and that Texas Mutual's position is "wholly immaterial" to Port Elevator's position.

[34] *See Garza*, 161 S.W.3d at 481.

[35] *See id.* at 479.

The Staff Leasing Services Act does not apply to temporary or seasonal employment, but the specificity with which it addresses workers' compensation strongly indicates that a leasing company cannot accomplish under the general workers' compensation provisions of the Labor Code what it is prohibited from accomplishing under the Staff Leasing Services Act, which is also a part of the Labor Code. Suppose, for example, that the leasing company and the client decided not to expressly agree in a written contract that the client shares the right of direction and control of employees, but in fact, the parties contemplated they would share actual control and did so. The Staff Leasing Services Act would not apply. Did the Legislature intend to allow the leasing company and its client nevertheless to agree that the leasing company would obtain a policy for itself, based on its own experience rating, and that such a policy would also cover leased employees while working under the actual control of the client? The answer is no, this is not contemplated by the Labor Code. The specificity and details of the Staff Leasing Services Act negate the notion that parties can, by private agreement, decide that a single policy naming only one insured will cover one company's employees while they are working under the direct control of another company, or that the experience rating of one and not the other will determine who the named insured will be.[36]

Here, Port Elevator argues that because it can show that it had explicit workers' compensation insurance coverage for itself, it established the exclusive remedy affirmative defense, and is not required to show that its workers' compensation policy *covered* *Casados*. We disagree.

In *Garza*, the supreme court stated: "Accordingly, Exel has not established that it is 'covered by workers' compensation insurance coverage' for a work-related injury sustained by the employee,' *in this case, Garza*, which is a prerequisite to the application of the exclusive remedy provision in section 408.001(a)."[37]

We hold that the summary judgment evidence conclusively established that Casados was not a covered employee under Port Elevator's workers' compensation

---

[36] *Id.* (internal footnotes omitted).

[37] *Id.* at 481 (emphasis added).

insurance policy. Following *Garza*, we hold that Port Elevator has not established that it is covered by workers' compensation insurance coverage for a work-related injury sustained by the employee, in this case, Casados, which is a prerequisite to the application of the exclusive remedy provision in section 408.001(a).[38] We overrule Port Elevator's sole issue. In so holding, we are mindful that the workers' compensation statute is liberally construed in the worker's favor.[39]

## IV. Conclusion

We hold that the trial court did not err in denying Port Elevator's motion for summary judgment and in granting appellees' motion for partial summary judgment. We affirm the trial court's judgment.

LINDA REYNA YAÑEZ,
Justice

Delivered and filed the
27th day of May, 2010.

---

[38] *See id.* (emphasis added).

[39] *See Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex. 1986).