TEXAS WORKERS' COMPENSATION
INSURANCE FUND, Petitioner,

v.

DEL INDUSTRIAL, INC., Respondent.

No. 98–0946.

Supreme Court of Texas.

Argued Sept. 15, 1999.

Decided April 6, 2000.

Lynne Liberato, Kent Rutter, Houston, Mary Barrow Nichols, Jeffrey R. Boggess, Austin, for Petitioner.

Hector CeLeon, Thomas P. Washburn, Austin, for Respondent.

Justice ABBOTT delivered the opinion of the Court.

The primary issue in this case is whether the Staff Leasing Services Act requires a company that purchases workers' compensation insurance for its employees to pay premiums for employees whom the company leases from a staff leasing company when the staff leasing company declines to purchase coverage for those leased workers. The trial court answered yes, but the court of appeals answered no. 973 S.W.2d 743. We affirm the court of appeals' judgment.

## I

DEL Industrial, Inc. is a company that cleans refinery storage tanks through high-pressure water-blasting. DEL's workforce consists of two groups: workers directly employed by DEL and workers leased by DEL from Administrative Resources, Ltd. ("ARL"), a staff leasing company. ARL did not provide workers' compensation insurance for the employees it leased to DEL. DEL contracted with the Texas Workers' Compensation Insurance Fund ("the Fund") to provide workers' compensation coverage for its direct (non-leased) employees for a period from March 30, 1994 to March 22, 1996. At the end of that policy period, the Fund billed DEL an additional $82,047 to cover the cost of premiums for the workers leased from ARL. When DEL refused to pay, the Fund filed suit to collect the unpaid premiums.

Both parties moved for summary judgment. The trial court granted partial summary judgment for the Fund and found DEL liable for premiums based on the court's construction of one key sentence in the Staff Leasing Services Act ("SLSA"):

The Court finds that, because of the language of Texas Labor Code § 91.042(c) providing that "For workers' compensation insurance purposes, a license holder [staff leasing company] and the license holder's client company shall be coemployers," employees leased by Defendant [DEL] from a staff leasing company are covered under Defendant's workers' compensation insurance policy issued by the Texas Workers' Compensation Insurance Fund. Therefore, the Court finds as a matter of law the Texas Workers' Compensation Insurance Fund is entitled to premium under its policy issued to Defendant DEL Industrial, Inc., for workers provided by a leasing company without statutory workers' compensation insurance coverage.

The trial court then conducted a nonjury trial to determine the amount of recovery, and awarded the Fund $30,215.64 in premiums and interest.

The court of appeals reversed and rendered judgment that DEL was not liable to the Fund for the premiums on the leased workers. 973 S.W.2d at 749. The court of appeals held that under the SLSA, "the staff leasing company and the client company are coemployers only to the extent of the statutory consequences of [the staff leasing company's election of workers' compensation insurance]." Id. The court of appeals concluded that staff leasing companies possess the exclusive right to elect or decline coverage for leased employees under the SLSA, id. at 746–47, and that the SLSA supersedes the right-of-control test in defining the relationship between client companies and staff leasing companies for workers' compensation pur-

poses, *id.* at 749. Accordingly, the court of appeals held that workers' compensation insurance policies purchased by client companies like DEL do not cover leased employees, and, as such, client companies are not obligated to pay workers' compensation premiums to cover the leased employees. *Id.* at 748.

## II

This case turns on the interpretation and application of section 91.042 of the SLSA. It provides:

§ 91.042. **Workers' Compensation Insurance**

(a) A license holder may elect to obtain workers' compensation insurance coverage for the license holder's assigned employees through an insurance company as defined under Section 401.011(28) or through self-insurance as provided under Chapter 407.

(b) If a license holder maintains workers' compensation insurance, the license holder shall pay workers' compensation insurance premiums based on the experience rating of the client company for the first two years the client company has a contract with the license holder and as further provided by rule by the Texas Department of Insurance.

(c) For workers' compensation insurance purposes, a license holder and the license holder's client company shall be coemployers. If a license holder elects to obtain workers' compensation insurance, the client company and the license holder are subject to Sections 406.034 and 408.001.

(d) If a license holder does not elect to obtain workers' compensation insurance, both the license holder and the client company are subject to Sections 406.004 and 406.033.

(e) After the expiration of the two-year period under Subsection (b), if the client company obtains a new workers' compensation insurance policy in the company's own name or adds the company's former assigned workers to an existing policy, the premium for the workers' compensation insurance policy of the company shall be based on the lower of:

(1) the experience modifier of the company before entering into the staff leasing arrangement; or

(2) the experience modifier of the license holder at the time the staff leasing arrangement terminated.

(f) On request, the Texas Department of Insurance shall provide the necessary computations to comply with Subsection (e).

Tex. Lab. Code § 91.042.

The Fund contends that the "coemployer" language in subsection (c) means that DEL is the coemployer of the leased employees for workers' compensation purposes such that the leased workers were covered by DEL's workers' compensation policy. However, that interpretation of "coemployer" ignores the context in which the word is used and is contrary to the express statutory scheme developed by the Legislature.

In construing a statute, we presume that the Legislature intended the entire statute to be effective. *See* Tex. Gov't Code § 311.021(2). "[I]t is settled that every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible." *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963). In addition, we do not view disputed portions of a statute in isolation. *See Bridgestone/Firestone, Inc. v. Glyn–Jones*, 878 S.W.2d 132, 133 (Tex.1994). Accordingly, section 91.042(c), the "coemployer" provision, must be construed within the context of the entire statutory scheme. Applying these principles, we hold that section 91.042 establishes that the staff leasing company and the client company are coemployers only to the extent of the

consequences of the staff leasing company's decision to elect or deny workers' compensation insurance coverage. Those consequences are specifically set out in section 91.042 and do not include the consequence that a client company's workers' compensation policy provides coverage for leased employees when the staff leasing company does not obtain coverage.[1]

■ Section 91.042(a)'s plain language grants the staff leasing company the exclusive right to elect whether to obtain workers' compensation coverage for the leased employees. Section 91.042(a) frames the right to elect workers' compensation coverage solely in terms of the leasing company: "A license holder [staff leasing company] may elect to obtain workers' compensation coverage for the license holder's assigned [leased] employees...." TEX. LAB.CODE § 91.042(a). Nowhere does the statute provide for the client company to elect to obtain workers' compensation coverage for the leased employees.

The remainder of section 91.042 sets out the consequences of the leasing company's election. For instance, under subsection (b), if the staff leasing company elects to obtain workers' compensation insurance, the premiums will be based on the client company's experience rating, not the staff leasing company's rating. Subsections (c)—the focus of the Fund's claim—and (d) set out the liability consequences of the staff leasing company's election. If the staff leasing company elects coverage, *both* the staff leasing company *and* the client company are subject to the employee election, exclusive remedy, and exemplary damages provisions of the Texas Labor Code. See *id.* § 91.042(c); see also *id.* §§ 406.034, 408.001.[2] But if the staff leasing company does not elect to obtain workers' compensation insurance, *both* the staff leasing company *and* the client company must notify the Texas Workers' Compensation Commission and are subject to common law suits without the benefit of certain defenses. See *id.* § 91.042(d); see also *id.* §§ 406.004, 406.033.[3] The first sentence of subsection (c) simply clarifies that the staff leasing company and the client company are to operate in tandem with respect to workers' compensation liability. Because the Legislature immediately followed the term "coemployers" with an explicit explanation of the consequences of the staff leasing company's election, we hold that the staff leasing company and the client company are "coemployers" only to the extent of the consequences of the staff leasing company's election.

The overall structure of the SLSA also supports the position that only the staff leasing company may elect workers' compensation insurance coverage. Throughout the Act, the Legislature places primary responsibility for assigned workers on the staff leasing company, not the client

1. The Fund contends that, under DEL's contract with ARL, DEL is contractually obligated to provide workers' compensation insurance to the leased employees. But this issue was neither raised in nor decided by the trial court or the court of appeals. Thus, we neither consider nor decide whether a client company can be obligated by its contract with the staff leasing company to pay for the workers' compensation premiums resulting from the staff leasing company's election of coverage.

2. Section 406.034 allows employees, upon timely notification, to waive coverage under workers' compensation insurance law and retain all rights of action under common law. See TEX. LAB.CODE § 91.042(c). Section 408.001 provides that recovery of workers'

compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage. But, the "surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence" may recover exemplary damages. *Id.* § 408.001.

3. Under section 406.004, employers who do not obtain workers' compensation insurance coverage must notify the commission, and failure to comply constitutes an administrative violation. See TEX. LAB.CODE § 406.004. Section 406.033 prevents employers who do not have workers' compensation insurance from asserting traditional common law defenses. See *id.* § 406.033.

company. The staff leasing company "retains the right of direction and control" over the assigned workers. *Id.* § 91.032(1).[4] Also, the staff leasing company must assume responsibility for the payment of wages to the assigned employees, without regard to payments made by the client company to the staff leasing company, and collect and pay the assigned employees' payroll taxes. *See id.* § 91.032(2), (3). It is the staff leasing company's responsibility to inform its assigned employees of the contractual agreement with the client company. *See id.* § 91.031(b). The Legislature holds the staff leasing company responsible for the adoption of employment and safety policies. *See id.* § 91.032(5). In addition, the staff leasing company, *not the client company,* retains the right to hire, fire, direct, and control the assigned employees. *See id.* at § 91.032(1), (4). Most importantly, the staff leasing company "retains the right of direction and control over the management of workers' compensation claims, claim filings, and related procedures." *Id.* The fact that the Legislature places primary responsibility for the leased workers on the staff leasing company is consistent with the proposition that the staff leasing company holds the exclusive right to elect or deny workers' compensation coverage for the leased workers.

The Fund contends that section 91.042 is merely silent with respect to the client company's right to procure coverage. This argument, however, is belied by provisions within the SLSA that expressly address rights held by client companies. For example, the provision immediately preceding section 91.042 expressly allows both the staff leasing company and the client

company to sponsor and maintain employee benefit plans. *See id.* § 91.041. Thus, if the Legislature intended *either* the staff leasing company *or* the client company to be able to elect workers' compensation coverage, it would have provided for that in the statute's plain language.

█ We hold that the SLSA does not require that leased workers be included in the workers' compensation policy of a client company when the staff leasing company declines to purchase coverage. Accordingly, we conclude that DEL is not liable to the Fund for workers' compensation premiums for the employees it leased from ARL.

### III

█ The Fund alternatively argues that DEL's workers' compensation policy covers its leased workers because DEL is their "employer" under the common law right-of-control test. Generally, courts determine whether a workers' compensation insurance policy covers a worker's injury by determining whether the subscribing company is the worker's employer under the right-of-control test. *See Thompson v. Travelers Indem. Co.,* 789 S.W.2d 277, 278 (Tex.1990). But the SLSA expressly provides that the staff leasing company maintains "the right of direction and control" over the leased employees for a variety of purposes, including workers' compensation benefits. *See* Tex. Lab.Code § 91.032. Moreover, the SLSA grants the staff leasing company the exclusive right to elect or deny workers' compensation coverage to leased workers. *See id.* § 91.042(b), (c). Thus, we agree with the court of appeals that the SLSA statutorily supersedes the

---

4. In 1999, the Legislature amended section 91.032. *See* Tex. Lab.Code § 91.032 (amended by Acts 1999, 76th Leg., ch. 771, § 7, eff. Sept. 1, 1999). However, the amendment is not effective as to this case because the statutory notes following the section specifically provide that:

> [t]he change in law made by this Act to Section 91.032, Labor Code, applies only to a contract between a staff leasing service

license holder and a client company entered into on or after the effective date of this Act. A contract entered into before that date is governed by the law in effect on the date the contract was entered into, and the former law is continued in effect for that purpose.

Tex. Lab.Code § 91.032 Historical and Statutory Notes (1999 Legislation).

common law right-of-control test in determining employer status of leased employees for workers' compensation coverage purposes.

The Fund argues that our construction of the SLSA "[a]llows an employer, for the first time in Texas history, to provide workers' compensation coverage to a portion of its workforce while denying coverage to another segment of that same workforce." It has long been the law in Texas that an employer may not split its workforce by providing workers' compensation insurance to some workers while leaving others without coverage. *See Maryland Cas. Co. v. Sullivan*, 160 Tex. 592, 334 S.W.2d 783, 786 (1960); *Pacific Indem. Co. v. Jones*, 160 Tex. 164, 327 S.W.2d 441, 443 (1959); *Hartford Accident & Indem. Co. v. Christensen*, 149 Tex. 79, 228 S.W.2d 135 (1950); *Barron v. Standard Accident Ins. Co.*, 122 Tex. 179, 53 S.W.2d 769, 770 (1932); *Buice v. Service Mut. Ins. Co.*, 90 S.W.2d 342, 343 (Tex.Civ.App.—Waco 1936, writ ref'd); *Barta v. Texas Reciprocal Ins. Ass'n*, 67 S.W.2d 433, 434 (Tex.Civ. App.—San Antonio 1933, writ ref'd). Thus, DEL could not purchase workers' compensation insurance for some of its direct employees while denying coverage to other direct employees.

But the Texas cases prohibiting "split workforces" do not address staff-leasing relationships, and were decided prior to the Legislature's passage of the SLSA. As recognized by the Fourteenth Court of Appeals, "[t]he common law has been dramatically engrafted upon by the legislature. Where the common law is revised by statute, the statute controls." *Bartley v. Guillot*, 990 S.W.2d 481, 485 (Tex.App.—Houston [14th Dist.] 1999, pet. denied) (applying Texas Insurance Code art. 5.06–1); *see also Signal Oil & Gas Co. v. Universal Oil Prods.*, 572 S.W.2d 320, 330 (Tex.1978) (recognizing that the common law applies only when it does not conflict with a statute); *Ryan v. Travelers Ins. Co.*, 715 S.W.2d 172, 175 (Tex.App.— Houston [1st Dist.] 1986, writ ref'd n.r.e.).

Therefore, we apply the SLSA according to its plain language, even if the practical effect is that only part of DEL's workforce receives workers' compensation insurance coverage.

\* \* \* \* \*

In conclusion, we hold that the Staff Leasing Services Act does not require a company that purchases workers' compensation insurance for its employees to pay premiums for employees whom the company leases from a staff leasing company when the staff leasing company declines to purchase coverage for those leased workers. The staff leasing company and the client company are coemployers of the assigned workers only to the extent that they share the consequences of the staff leasing company's election. Under the Act, the staff leasing company holds the exclusive right to elect or deny workers' compensation coverage for assigned employees. We also hold that the Staff Leasing Services Act supersedes the common law right-of-control test in defining the relationship between client companies and staff leasing companies for workers' compensation purposes. Therefore, we affirm the court of appeals' judgment.