# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

August 22, 2005

Mr. John D. White, Chair
Board of Regents
The Texas A&M University System
Post Office Box C-1
College Station, Texas 77843

Opinion No. GA-0351

Re: Legal status of a state university's contract with a law firm when an individual who became a member of the university's board of regents after the contract was awarded subsequently became a partner in the law firm (RQ-0320-GA)

Dear Mr. White:

Through your general counsel, your predecessor asked about the legal status of a contract between The Texas A&M University System ("TAMUS") and a law firm, when an individual who became a TAMUS regent after the contract was awarded subsequently joined the law firm as a partner.[1] It was also asked whether TAMUS may pay the law firm for services rendered under the contract after the regent joined the firm. Request Letter, *supra* note 1, at 1.

## I.     Factual Background

TAMUS contracted for outside counsel services on intellectual property matters with the law firm ("the firm") for the 2001-2002 state fiscal year, renewing the contract in subsequent years. The contract inquired about covered the fiscal year from September 1, 2003, to August 31, 2004. *See id.* at 1-2. Your predecessor stated that in October 2003, the regent in question was sworn in as a member of the TAMUS Board of Regents (the "board"). In November of 2003, the same regent joined the law firm as a partner. *See id.* at 2. Thus, the contract at issue predates the individual's appointment to the board and his joining the law firm. *See id.* at 1. The firm continued to provide legal services for intellectual property matters from November 2003 through June 2004, to the satisfaction of TAMUS. *See id.* at 2. Billings for that time period totaling more than $18,000 have been submitted to TAMUS with the expectation that they would be paid pursuant to the contract. *See id.*

---

[1]Letter from Mr. Delmar L. Cain, General Counsel, The Texas A&M University System, to Honorable Greg Abbott, Texas Attorney General (Feb. 10, 2005) at 1 (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

II.    **Questions**

The following questions were asked about the contract:

1.  What effect, if any, did the fact that a firm partner became a Member of the Board of Regents have on the legal status of the pre-existing contract between the law firm and the A&M System?

2.  Is the firm entitled to payment for services it rendered under the agreement subsequent to the date the partner became a regent?

*See id.* at 1.

III.    **Common-law Conflict of Interest**

A.    **Summary**

Texas courts have held that a member of a governmental body may not have a personal financial interest in a contract entered into by the governmental body. *See Edinburg v. Ellis*, 59 S.W.2d 99 (Tex. Comm'n App. 1933, holding approved); *Delta Elec. Constr. v. City of San Antonio*, 437 S.W.2d 602 (Tex. Civ. App.–San Antonio 1969, writ ref'd n.r.e.); *Meyers v. Walker*, 276 S.W. 305, 307 (Tex. Civ. App.–Eastland 1925, no writ). This office has relied on these authorities in addressing questions about contractual conflicts of interest. *See* Tex. Att'y Gen. Op. Nos. GA-0068 (2003) at 2, JC-0426 (2001) at 2. A contract made in violation of this principle is illegal and void, because the public officer's personal financial interest in an entity might cause him to favor that entity, thereby interfering with his faithful discharge of public duty. *See Meyers*, 276 S.W. at 307; *see also Delta Elec. Constr.*, 437 S.W.2d at 609. The common-law doctrine also seeks to avoid the appearance of impropriety. *See Meyers*, 276 S.W. at 307; Tex. Att'y Gen. Op. No. JC-0018 (1999) at 4.

Common-law conflict of interest rules have their effect at the time a contract is entered into. *See generally* Tex. Att'y Gen. Op. Nos. JM-450 (1986) at 1, JM-310 (1985) at 2. A contract is invalid under common law only if a public officer has or shares with others the authority to contract with an entity in which he is financially interested. *See* Tex. Att'y Gen. Op. Nos. JM-171 (1984) at 3, O-2306 (1940) at 2. *See also* Tex. Att'y Gen. Op. No. JM-310 (1985) at 2 (conflict of interest rules inapplicable to officer with no power to make or influence making the contract).

B.    **Legislative Modification of the Common-law Conflict of Interest Rules**

The legislature may change common-law rules. *See Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 596 (Tex. 2000); Tex. Att'y Gen. Op. No. GA-0046 (2003) at 3-4. It has adopted statutes modifying the common-law conflict of interest doctrine in various ways. For example, the rules articulated in *Meyers v. Walker* no longer apply to local public officials, who are now subject to the conflict of interest provisions in Local Government Code

chapter 171. *See* TEX. LOC. GOV'T CODE ANN. § 171.007(a) (Vernon 1999) ("[t]his chapter preempts the common law of conflict of interests as applied to local public officials"). If a local public official has a substantial interest in a business entity or real property, chapter 171 requires him to disclose his interest and cease to participate in a board vote or action that would have a special economic effect on the business entity or value of the real property. *See id.* § 171.004.

The members of state governmental boards, including the governing boards of state universities, are generally subject to the *Meyers v. Walker* conflict of interest rules. *See* Tex. Att'y Gen. Op. Nos. JC-0426 (2001) (state university board of regents); JM-884 (1988) (State Commission for the Deaf); MW-179 (1980) (member of Texas Board of Health); V-640 (1948) (state college board of regents). No statute comparable to Local Government Code chapter 171 applies to state officers, but the legislature has repealed the common law for state-level entities in limited circumstances. For example, Government Code section 404.0211 permits a state agency to contract with a bank as a depository for its funds even though "one or more officers or employees of the agency who have the duty to select the agency's depository are officers or directors of the bank" or have a beneficial interest in the bank's stock. TEX. GOV'T CODE ANN. § 404.0211 (Vernon 2005). A majority of the members of the agency's governing body must vote to select the depository, and the interested officer or employee must not take part in the proceedings. *See id. See also* TEX. EDUC. CODE ANN. § 51.923 (Vernon 1996) (institution of higher education may contract with a corporation even though one or more members of the governing board is a stockholder or director of the corporation, subject to certain conditions).

It has been argued that the predecessor of Government Code section 572.058 abrogated the *Meyers v. Walker* rule for state agencies and institutions of higher education. *See* Tex. Att'y Gen. Op. No. JM-671 (1987) (construing former Revised Civil Statutes article 6252-9b, section 6,[2] now Government Code section 572.058(a)[3]); Request Letter, *supra* note 1, at 4 n.6. Chapter 572, which establishes financial disclosure requirements for public officers and standards of conduct for public officers and employees, *see* TEX. GOV'T CODE ANN. § 572.001(b) (Vernon 1994), includes the following provision:

> An elected or appointed officer, other than an officer subject to impeachment under Article XV, Section 2, of the Texas Constitution, who is a member of a board or commission having policy direction over a state agency *and who has a personal or private interest in a measure, proposal, or decision* pending before the board or commission shall publicly disclose the fact to the board or commission in a meeting called and held in compliance with Chapter 551. The officer may not vote or otherwise participate in

---

[2]*See* Act of May 28, 1973, 63d Leg., R.S., ch. 421, § 6, 1973 Tex. Gen. Laws 1086, 1093.

[3]*See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 640-41 (adopting nonsubstantive revisions of certain statutes relating to state and local government).

the decision. The disclosure shall be entered in the minutes of the meeting.

*Id.* § 572.058(a) (emphasis added).

A state agency for purposes of chapter 572 includes "a university system or an institution of higher education as defined by Section 61.003, Education Code, other than a public junior college." *Id.* § 572.001(10)(B) (Vernon Supp. 2004-05). TAMUS is a university system within this definition. *See* TEX. EDUC. CODE ANN. § 61.003(10) (Vernon Supp. 2004-05). A "'personal or private interest' has the same meaning as is given to it under Article III, Section 22, of the Texas Constitution, governing the conduct of members of the legislature." TEX. GOV'T CODE ANN. § 572.058(f) (Vernon 1994). Article III, section 22 provides that "[a] member who has a personal or private interest in any measure or bill, proposed, or pending before the Legislature, shall disclose the fact to the House, of which he is a member, and shall not vote thereon." TEX. CONST. art. III, § 22. While the courts have not construed this provision, commentators have suggested that it leaves to the individual legislator's judgment whether the legislator has a "personal or private interest" requiring disclosure and abstention. *See* Tex. Att'y Gen. Op. No. GA-0087 (2003) at 2 (citing TEX. CONST. art. III, § 22 interp. commentary (Vernon 1997)); 1 GEORGE D. BRADEN *et al.*, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 141 (1977). An individual who violates section 572.058 is subject to removal from office. *See* TEX. GOV'T CODE ANN. § 572.058(b) (Vernon 1994).

Attorney General Opinion JM-671[4] concluded that the predecessor of section 572.058 did not change the *Meyers v. Walker* rule so as to allow a state university system to contract with a private entity despite a board member's personal interest in the entity. *See* Tex. Att'y Gen. Op. No. JM-671 (1987) at 4-8. Attorney General Opinion JM-671 found that neither the statutory language nor the legislative history expressed an intent to modify the common-law rule expressed in *Meyers v. Walker*. *See id.* at 6-7. The statute was based on a provision applicable to legislators, who do not enter into contracts on behalf of the state. *See id.* at 7. The legislature did not view this provision as modifying the common-law prohibition against state contracts in which a member of the contracting board is financially interested, but instead as affecting rulemaking and other regulatory functions. *See id.* at 7. Section 572.058 does not modify the common-law rule for state officers, although it does apply to other kinds of decisions by a state agency board or a state university governing body. *See* Tex. Att'y Gen. Op. No. H-1319 (1978) at 2 (considering whether board member's contract with licensee subject to disciplinary proceeding constituted a personal or private interest in proceeding).

## C.     Argument for Abandoning the *Meyers v. Walker* Rule

The request letter argues that the *Meyers v. Walker* rule imposes an overly strict standard that should no longer be applied to public contracts. *See* Request Letter, *supra* note 1,

---

[4]Attorney General Opinion JM-671 was requested by TAMUS.

at 4, 8-9 (referring to financial disclosure and open government laws that have been adopted since *Meyers v. Walker* was issued). As we have pointed out, the legislature has modified the common-law conflict of interest law for certain governmental entities and transactions. *See* TEX. GOV'T CODE ANN. § 404.0211 (Vernon 2005) (state agency's selection of depository bank); TEX. LOC. GOV'T CODE ANN. ch. 171 (Vernon 1999 & Supp. 2004-05) (local public officers' conflict of interest law). Education Code section 51.923, which authorizes an institution of higher education to contract with a corporation despite a regent's personal financial interest in it, was adopted to modify the common-law rule as applied in a particular attorney general opinion. *See* SENATE COMM. ON EDUCATION, BILL ANALYSIS, Tex. H.B. 1569, 71st Leg., R.S. (1989) (citing Attorney General Opinion JM-671 (1987)). The legislature may change the common-law rule applicable to contracts between universities and partnerships in which university regents are financially interested. And of course Texas courts may modify common law rules on a cases-by-cases basis. *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987); *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 310 (Tex. 1983). It is for the legislature or the courts to modify or abandon the strict common-law conflict of interest standard of *Meyers v. Walker*.

## IV.   Analysis

### A.   Application of the Common-law Conflict of Interest Rules to TAMUS

The governance of TAMUS is vested in a board of nine regents, which "shall make bylaws, rules, and regulations it deems necessary and proper for the government of the university system." TEX. EDUC. CODE ANN. §§ 85.11, .21(a) (Vernon 2002). The board appoints a chief executive officer who "is responsible to the board for the general management and success of the university system, and the board may delegate authority, establish guidelines, and cooperate with the executive officer to carry out that responsibility." *Id.* § 85.17(d). "The chief executive officer may delegate his authority if approved by the board." *Id.* The governance provision vests authority to contract on behalf of TAMUS in the board, even though it has delegated to university administrators the authority to approve contracts involving consideration of less than $300,000.[5] *See Bache Halsey Stuart Shields, Inc. v. Univ. of Houston*, 638 S.W.2d 920, 927, 930 (Tex. App.–Houston [1st Dist.] 1982, writ ref'd n.r.e.) (university board of regents' authority to manage university included authority to delegate investment duties to employees and university was bound by acts of employees); Tex. Att'y Gen. Op. No. JM-817 (1987) at 3-4 (a university officer or employee is authorized to contract for the university only because the board of regents has adopted a rule, regulation, or order delegating such power). *Cf.* Tex. Att'y Gen. LA-148 (1977) (employment of regent's niece by state university would violate the nepotism statute even though the board of regents had delegated employment power).

The TAMUS Board of Regents is subject to common-law conflict of interest rules, except where legislation modifies those rules for a particular kind of contract. *See* Tex. Att'y Gen.

---

[5]*See* Texas A&M University System Policy Manual § 25.07, ¶ 4(2), *available at* http://sago.tamu.edu/policy/25-07.htm (visited May 3, 2005).

LO-93-12; Tex. Att'y Gen. Op. No. JM-671 (1987). Education Code section 51.923 authorizes TAMUS to contract with a corporation despite a regent's personal financial interest in it, but the law firm in this case is a limited partnership.[6] *See generally* Request Letter, *supra* note 1, at 1. Thus, section 51.923 does not apply to a contract between TAMUS and the law firm. Attorney General Letter Opinion 93-12, which dealt with a proposed contract between TAMUS and a law firm operating as a partnership, concluded that TAMUS could not contract with a law firm in which a TAMUS regent was a partner. *See* Tex. Att'y Gen. LO-93-12, at 3. The regent's personal financial interests in the proposed contract, consisting in his salary from the law firm and his share in the firm's profits and losses, prevented the TAMUS Board from contracting with the law firm. *See id.* at 2-3; *see also* TEX. REV. CIV. STAT. ANN. art. 6132b-4.01(a)-(b) (Vernon Supp. 2004-05) (partnership provisions). Attorney General Letter Opinion 93-12 does not answer the question before us, however, because there is a crucial difference between its facts and those of the present request. Unlike the situation here, the TAMUS regent at issue in Letter Opinion 93-12 was a regent and a partner in the law firm at the time TAMUS entered into the contract.

**B.      Effect of a Regent's Conflict of Interest on a Pre-existing Contract with a Law Firm**

The conflict of interest that your predecessor inquired about did not exist when TAMUS entered into the contract with the law firm. A conflict of interest arising after the contract was made does not invalidate it. *See* Tex. Att'y Gen. Op. Nos. JM-171 (1984) at 3, O-2306 (1940) at 2. Thus, the individual's appointment to the TAMUS Board and his joining the law firm did not invalidate TAMUS's pre-existing contract with the law firm. However, TAMUS may not enter into another contract with the law firm while the regent remains a partner in the firm. The regent's conflict of interest prevents the TAMUS Board from exercising its contractual right to extend the contract for an additional twelve-month period. *See generally* Request Letter, *supra* note 1, at 1. Nor may the board amend the contract in which the regent is interested. *See Flagship Hotel, Ltd., v. City of Galveston*, 117 S.W.3d 552, 560 (Tex. App.–Texarkana 2003, pet. denied) (holding amendment to lease created a new lease for the purpose of the maximum lease term allowed by Local Government Code section 307.023); *Boudreaux Civic Ass'n v. Cox*, 882 S.W.2d 543, 547-48 (Tex. App.–Houston [1st Dist.] 1994, no writ) ("A modification to a contract creates a new contract that includes the new, modified provisions and the unchanged old provisions.").

**C.      Whether TAMUS May Pay the Law Firm for Services Rendered Under the Contract**

We have already determined that the regent's joining the law firm did not invalidate the TAMUS contract with the law firm. TAMUS may thus fulfill obligations it incurred under the contract before its termination on August 31, 2004. *See generally Fed. Sur. Co. v. Pitts*, 29 S.W.2d 1046, 1049 (Tex. 1930) (a contract is a "deliberate engagement between competent parties . . . to do, or to abstain from doing, some act") (quoting *Pelham v. State*, 30 Tex. 426 (Tex. 1867). Common-

---

[6]Our opinion addresses a specific type of business organization and we do not consider whether the conclusion would differ if the law firm were organized differently.

law conflict of interest rules do not prohibit TAMUS from paying the law firm for the services it rendered under the contract after the regent joined the law firm. If the board approves the payments, the regent with an interest in the contract must announce his interest and recuse himself as required by Government Code section 572.058(a). *See* TEX. GOV'T CODE ANN. § 572.058(a) (Vernon 1994); *see also* TEX. EDUC. CODE ANN. § 85.22 (Vernon 2002) (procedure for paying TAMUS expenditures by vouchers approved by the president of the board or by an officer or officers designated by him in writing to the comptroller).

Your predecessor asked several more questions based on the assumption that "contracts made prior to appointment of a board member [may] be voided for no reason other than the fact that the member may benefit from their continued existence." Request Letter, *supra* note 1, at 9. In view of our conclusions to the first two questions, we need not address the remaining issues that were raised.

# S U M M A R Y

Common-law conflict of interest rules do not invalidate a contract formed before the conflict arose. When The Texas A&M University System had previously contracted with a law firm, the fact that a university regent was appointed after contract formation and subsequently joined the law firm as a partner did not invalidate the contract. Common-law conflict of interest rules do not prevent the university from paying for services that the law firm provided under the pre-existing contract after the regent was appointed to the board and joined the law firm. The Texas A&M University System may not enter into another contract with the law firm while a regent is a partner in the firm.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee