Opinion issued April 28, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00360-CV

———————————

AMS Construction Company, Inc., d/b/a AMS Staff LEASING, Appellant

V.

K.H.K.
Scaffolding Houston, Inc., Appellee



 



 

On Appeal from the 189th District Court  

Harris County, Texas



Trial Court Case No. 0018289

 



 

O P I N I O N

          In this case, an employer
sues its staff leasing company for its failure to comply with its agreement to
provide workers’ compensation insurance for one of the employer’s injured
workers.  A jury found that the staff
leasing company failed to comply with the agreement, that its failure was not
excused, and that it committed fraud. 
The trial court rendered judgment on the jury’s breach of contract
findings.       

          The staff leasing company,
AMS Construction Company, Inc. d/b/a AMS Staff Leasing, appeals the jury’s
verdict in favor of the employer, K.H.K. Scaffolding Houston, Inc.  AMS contends that: (1) the trial court lacked subject matter
jurisdiction to hear KHK’s claims; (2) no evidence supports the jury’s findings
of breach of contract and fraud; (3) KHK waived its argument that AMS’s
workers’ compensation insurance policy covered the injured worker; and (4) KHK
and the injured worker improperly colluded against AMS, and this invalidates
the trial court’s judgment on public policy grounds.  We conclude that the trial court had
jurisdiction to hear the suit, legally sufficient evidence supports the jury’s breach
of contract findings, AMS did not preserve its claim of waiver in the trial
court, and no evidence exists of a collusive agreement.  We therefore affirm the jury’s verdict and
the trial court’s final judgment.  

Background

          Underlying Facts 

          In May 1999, AMS and KHK entered
into an Employee Leasing Agreement.  Jin Yung Kim, as chairman of KHK,
signed the agreement on behalf of KHK, and Doug Lowery, as president of AMS,
signed on behalf of AMS.  The term of the agreement was one year, but
it automatically renewed unless either party cancelled it.  In relevant part, the leasing agreement
provides: 

WHEREAS Client Company [i.e.
KHK] has contracted with AMS for 

          

leased employees on various
projects AND

 

          WHEREAS AMS wishes to provide labor on such projects

 

FOR CONSIDERATION
HEREINAFTER THE NAMED PARTIES

 

AGREE AS FOLLOWS:

 

          [. . . .]  

 

          Article
3[]       INDEMNITY AND INSURANCE  

(a) 
AMS agrees to
obtain and pay for Workers’ Compensation and Employee Liability Insurance,
including Occupational Disease Coverage, providing statutory benefits and with
liability limits of not less than $1,000,000 for Employer Liability Coverage.  AMS agrees to furnish Client Company with
Certificates of Insurance indicating compliance with the above requirements. .
. .

 

(b)
AMS agrees to
protect, indemnify[,] and hold Client Company harmless against all loss, cost
or expense which Client Company may incur or sustain in connection with or in
consequence of any claim of occupational injury relating to AMS’s employee
arising in any manner out of or in any way connected with or a result of
performance of this subcontract, or breach thereof, or any activity caused by
any negligent act or omission on the part of AMS, no matter by whom or on whose
behalf such claim, demand, suit or action may be asserted or brought.  In addition, AMS will service any such claim
or demand, defend any such suit or action, and judgment, including court costs
which may be awarded therein.  

 

          Under the agreement, AMS agreed to
obtain workers’ compensation insurance and to indemnify KHK for any claims of
occupational injuries brought against it by leased employees. 
AMS also took responsibility for handling the payroll for leased
employees.  In exchange, KHK agreed to
pay AMS a service fee plus administrative overhead. 
The agreement does not define “employee”, “AMS employee”, or “leased
employee.”     

          KHK had the complete
authority to hire leased employees.  AMS
representatives maintained that to be a leased employee, a KHK worker had to
submit an AMS employment application to AMS and be counted as a leased
employee.  In contrast, according to KHK
representatives, KHK never required an employee to submit an AMS application to
obtain workers’ compensation insurance and that it had numerous AMS leased
employees who had never completed an AMS application.  After the negligence suit, AMS and KHK
amended the leasing agreement to require that each new employee submit a
completed application to obtain workers’ compensation coverage. 

          AMS representatives
admitted at trial that if a KHK worker was on the AMS payroll, then AMS treated
him as a leased employee regardless of whether it had his application on file;
it also charged KHK a fee to cover that worker with workers’ compensation
insurance.    

          To place an employee on
the AMS payroll, KHK reported him in a “turnaround report,” which it submitted
to AMS.  Employees then received their
paychecks from AMS one week following the week they worked.  The pay period ran from Wednesday to Tuesday.  KHK reported payroll by submitting the
turnaround report on Thursdays.  AMS
processed the turnaround report and issued paychecks on Sundays. 
AMS delivered the
paychecks on Thursdays and received a check for reimbursement from KHK in the
amount of gross payroll, the administrative overhead, and premiums for workers’
compensation insurance for each worker reported on the turnaround report.   The more employees KHK leased from AMS, the
larger the fee KHK paid to AMS.    

          In February 2000, Osman Sosa began work at KHK’s
factory.  He worked approximately twenty
times at the factory.  During the work
week of March 22 to March 28 of 2000, Sosa worked twenty-four hours.   On
March 30, KHK reported Sosa’s hours in the turnaround report and submitted it
to AMS.  AMS charged and received a fee
to provide workers’ compensation insurance for that work week.  AMS issued Sosa a check dated April 6 for the
twenty-four hours he worked during the week of March 22 to March 28.  

          For the work week of March 29 to April
4, KHK reported Sosa’s hours in a turnaround report and submitted it to
AMS.  Sosa severely injured his hand on
March 31, the day after KHK first reported Sosa’s hours to AMS.  AMS charged and received a fee to provide
Sosa with workers’ compensation insurance for that week. 
AMS also issued
Sosa a paycheck dated April 13 for that week. 


          KHK reported Sosa’s injury to
AMS.  Andrew Price, AMS’s risk manager,
confirmed that Sosa was in its payroll system. 
Price then filed an Employer’s First Report of Injury with AMS’s
insurance company’s administrator.  The
administrator forwarded that report to the Texas Worker’s Compensation
Commission (the Commission).[1]
  

Proceedings in the trial court 

          About a week after the accident, Sosa
sued KHK for negligence and gross negligence in state district court.  KHK notified Price of Sosa’s lawsuit.  Price contacted Sosa’s attorney to tell him
that Sosa was a leased employee of AMS and covered by workers’ compensation
insurance.  He advised the attorney to
contact the insurance company’s administrator. 
The insurance company’s administrator informed the Commission that no
coverage existed for Sosa because no employee-employer relationship existed
between Sosa and AMS.  The Commission
then notified Sosa that the insurance company denied his claim.

          KHK filed a third party action against
AMS, asserting causes of action for breach of the leasing agreement,
declaratory judgment, fraud, fraudulent misrepresentation, and negligent
misrepresentation.  On the first day of
trial on Sosa’s negligence claims, KHK moved to abate, contending that the
exclusive remedy provision of the Texas Workers’ Compensation Act barred Sosa’s
suit because Sosa was an AMS employee and covered by workers’ compensation
insurance.  See Tex. Lab. Code Ann. § 408.001(a) (West 2006) (“Recovery of workers’ compensation benefits is the exclusive
remedy of an employee covered by workers’ compensation insurance coverage or a
legal beneficiary against the employer or an agent or employee
of the employer for the death of or a work-related injury sustained by the
employee.”).  The trial court denied the motion and
proceeded with the trial. The jury returned a verdict for Sosa on his
negligence claims and awarded him actual and punitive damages.    

          Before it signed the judgment, the
trial court allowed KHK to go to the Commission to resolve Sosa’s employment
status.  KHK requested informal dispute
resolution and a benefit review conference. 
The Commission denied the request because: (1) KHK failed to identify a
benefit dispute or its request was vague and unclear; (2) insufficient
documentary information existed on the benefit dispute; (3) the insurance
company denied that an employee/employer relationship existed between AMS and
Sosa; and (4) Sosa had not pursued the claim. 
The Commission advised KHK that once it obtained additional documentation,
KHK could submit a new request for informal dispute resolution.   

          After the Commission
declined KHK’s request, the trial court signed a final judgment on the jury’s
verdict awarding Sosa actual and punitive damages.  It severed Sosa’s claim against KHK from
KHK’s claim against AMS, thereby according finality to Sosa’s claims.  The case then proceeded between KHK and
AMS.  Before the trial, AMS moved to
abate, contending that the trial court lacked jurisdiction because neither KHK
nor Sosa had exhausted administrative remedies before the Commission.  According to AMS, the Commission had
exclusive jurisdiction to resolve the issue of whether Sosa was a leased
employee of AMS under the leasing agreement. 
AMS and KHK then stipulated that KHK was not named on the insurance
policy AMS obtained from its insurance carrier, and that KHK was not listed on
any endorsement to the policy.  Declining
to abate, the trial court proceeded with a jury trial on the claims.

          The jury found AMS liable for breach
of contract and fraud.  During the trial,
KHK and AMS had stipulated to the amount of actual damages in the event of a
jury verdict finding liability, equal to the amount of the judgment entered in
Sosa’s negligence trial against KHK and KHK’s reasonable attorney’s fees.  KHK and AMS also stipulated to the existence
of causation.   The trial court signed a
final judgment for KHK on the stipulated damages.     

SUBJECT MATTER JURISDICTION

          AMS contends that the trial court lacked subject
matter jurisdiction to enter a judgment against it on KHK’s breach of contract
claim.  According to AMS, the Commission
is vested with the exclusive jurisdiction to resolve whether Sosa qualified as
a leased employee under the staff leasing agreement, and because KHK’s claims
depend on Sosa’s employment status, the trial court lacked jurisdiction to hear
the case. 

Standard of Review 

          Whether an agency has exclusive jurisdiction depends upon
statutory interpretation, and is a question of law we review de novo.  Subaru
of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 222 (Tex.
2002).  Trial courts are courts of
general jurisdiction.  Dubai Petroleum
Co. v. Kazi, 12 S.W.3d 71,
75 (Tex. 2000).  Absent a contrary
showing, courts of general jurisdiction are presumed to have subject matter
jurisdiction.  Id. 
There is no similar presumption that administrative agencies are
authorized to resolve disputes.  Subaru
of Am., 84 S.W.3d at 220.  Rather,
they exercise only those powers the law, in clear and express statutory
language, confers upon them.  Id. 
Courts should not imply additional authority to agencies, nor may
agencies create for themselves any excess powers.  Id. 
But, if the legislature has vested an agency with exclusive
jurisdiction to hear the dispute, the courts have no subject matter
jurisdiction until all administrative proceedings are complete.  In re Entergy Corp., 142 S.W.3d 316, 321–22 (Tex. 2004).  A party can turn to the courts only after
first exhausting all administrative remedies. 
Id.; Subaru of Am., 84 S.W.3d at 221.  



 

The Workers’ Compensation Act and the Staff Leasing Services
Act         

          The Texas
Workers’ Compensation Act provides that the exclusive remedy for an employee
covered by workers’ compensation insurance for a work-related injury is
recovery of workers’ compensation benefits. 
See Tex. Lab.
Code Ann. § 408.001(a); Morales
v. Liberty Mut. Ins. Co.,
241 S.W.3d 514, 516 (Tex. 2007).  The Act
provides a three-tier administrative procedure for the resolution of disputes
over workers’ compensation benefits: a benefit-review conference, a
contested-case hearing, and an administrative appeal.  Tex. Lab. Code Ann. §§ 410.021-034, 410.151-169,
410.201-209 (West 2006 & Supp. 2010); Tex. Workers’ Comp. Comm’n v.
Garcia, 893 S.W.2d 504, 514
(Tex. 1995).  Only a claimant, a
subclaimant, a carrier, or an employer who has contested the compensability of
injury are entitled to request a benefit review conference.  28 Tex.
Admin. Code § 141.1(a) (2011) (Tex. Dep’t of Ins., Div. of Workers’
Comp., Dispute Resolution—Benefit Review Conference). A claimant or a carrier may
appeal a Commission Appeals Panel’s decision by filing suit in the district
court.  Tex. Lab. Code Ann. § 410.251, 410.301–308 (West 2006).  

          Under the
Staff Leasing Services Act, a staff leasing company decides whether to provide
workers’ compensation insurance coverage for both itself and the client company
for the employees it leases.  See Tex. Workers’
Compensation Fund v. Del Indus. Inc., 35 S.W. 3d 591, 596 (Tex. 2000).  If a leasing company elects coverage, its
policy covers both the leasing company and its client company as to the leased
employees.  See id.  But if the leasing
company elects not to obtain workers’ compensation coverage, the Labor Code
relegates both the leasing company and its client to the status of
nonsubscribers in assessing liability.  See Tex.
Lab. Code Ann. §§ 91.042(d), 406.033 (West 2006).  Section 406.033 permits negligence
suits against non-subscribers and prevents them from asserting certain common
law defenses.  Id. §
406.033 (West 2006).  Thus, the staff leasing company and the
client company are “co-employers” to the extent of the consequences of the
staff leasing company’s election.  Del Indus. Inc., 35 S.W. 3d at 596.  A client company’s decision not to lease all of its workers
to the staff leasing company may result in a split workforce where some
employees have workers’ compensation through the staff leasing company and
other do not. Wingfoot Enters. v. Alvarado, 111 S.W.3d 134, 145 (Tex. 2003).  

Exclusive Jurisdiction of the Commission 

          The Texas
Supreme Court in American Motorists Insurance Co. v. Fodge held that the
Texas Workers’ Compensation Act “vests the power to award compensation benefits
solely in the Workers’ Compensation Commission.”  63 S.W.3d 801, 803 (Tex. 2001).  A court cannot award compensation benefits to
an injured employee, except on appeal from a Commission ruling.  Id. at 804.  In addition, a court cannot award damages for
the denial of compensation benefits to an injured employee without a determination
by the Commission that such benefits are due.  Id. The
supreme court further concluded that a claim for wrongful deprivation of
workers’ compensation benefits brought by an injured worker against an
insurance carrier fall within the Commission’s exclusive jurisdiction.  Id.; see also In re Liberty Mut. Fire
Ins. Co., 295 S.W.3d 327, 328 (Tex. 2009) (holding that trial court did not
have jurisdiction to adjudicate injured worker’s bad-faith suit against his
workers’ compensation carrier for denying medical benefits because Commission
had exclusive jurisdiction to determine 
claimant’s entitlement to medical benefits); Henry v. Dillard Dept.
Stores, Inc., 70 S.W.3d 808, 809 (Tex. 2002) (holding that trial court did
not have jurisdiction to adjudicate injured worker’s suit against self-insured
employer for bad faith denial of reasonable and timely benefits); Macias v.
Schwedler, 135 S.W.3d 826, 830 (Tex. App.—Houston [1st Dist.]  2004, pet. denied) (holding that trial court
did not have jurisdiction to adjudicate wrongful death action based on various
torts and brought by representative of deceased worker against workers’
compensation carrier and its employees because the claims depended on
determination that worker sustained compensable injury).  

          Our
sister courts have extended Fodge to
also preclude an employer’s suit for benefits against a workers’ compensation
carrier based on the same denial of benefits. 
See Sonic Sys. Int’l., Inc. v.
Croix, 278 S.W.3d 377, 387 (Tex. App.—Houston [14th Dist.] 2008, pet.
denied); see also In re Tex. Mut. Ins.
Co., 157 S.W.3d 75, 77–82 (Tex. App.—Austin 2004, orig. proceeding)
(holding that Commission had exclusive jurisdiction over breach of contract
claim brought by employer’s assignee, who was subclaimant of injured employee,
against workers’ compensation carrier because it presupposed existence of
workers’ compensation policy and plainly sought benefits due under
policy).   

          The Commission’s exclusive
jurisdiction, however, does not extend to all cases that touch on workers’
compensation issues.  The district courts
decide disputes about whether the Act’s exclusive remedy provision applies as a defense to an injured worker’s
personal injury suit.  See, e.g., Garza v. Excel Logistics, Inc., 161 S.W.3d 473, 481 (Tex. 2005)
(holding that company did not establish that it was covered by workers’
compensation insurance for temporary employee’s injury because, even if
temporary worker agency was contractually obligated to provide workers’ compensation
insurance that named company as insured, company produced no evidence of such
policy); Wingfoot Enters, 111 S.W.3d
at 149 (holding that both temporary worker provider and provider’s client
company were “employers” of an injured temporary employee for the purposes of
the exclusive remedy provision).  Apropos
to this case, not all disputes involving a staff leasing company, a client
company, and a workers’ compensation carrier are Commission-bound
determinations.  In Del Industries Inc., for example, the supreme court held that the
workers leased from a staff leasing company to a client company were not the
client company’s employees for the purposes of computing the premiums for the
client company’s own workers’ compensation insurance.  35 S.W. 3d at 596.  The court, not the Commission, made this
determination.  Courts regularly preside
over the hashing out of the contractual relationships between staff leasing
companies, their client companies, and even on occasion their carriers.  

Analysis 

          This
case does not involve a dispute about workers’ compensation benefits from a
carrier under an insurance policy.  Here,
the dispute is whether AMS was contractually obligated to obtain workers’
compensation benefits for Sosa from an insurance carrier, and the consequence
of its failure to do so when no carrier stepped in to provide coverage, and the
Commission denied benefits.  KHK’s breach–of–contract claim does not presuppose
the existence of a workers’ compensation policy covering Sosa; instead it
presupposes that AMS bound itself under the leasing agreement to obtain a
policy that would have covered Sosa’s injury. 


          Neither
AMS nor KHK seeks workers’
compensation benefits as a claimant or a subclaimant under an insurance
policy.  Sosa sued KHK as a non-subscriber.  He denied he was a leased employee of
AMS.  The insurance company that issued
AMS’s workers’ compensation insurance policy denied him coverage, and AMS has
never produced a policy that covers Sosa or KHK.  After Sosa’s personal injury trial, the Commission
denied KHK’s request for a benefit review conference.  Unlike the facts of Fodge and its progeny, no pending claim exists whose resolution
requires a determination of a claimant’s entitlement to workers’ compensation
benefits.  See Tex. Mut. Ins. Co. v. Tex. Dept. of Ins., Div. of Workers’
Compensation, 214 S.W.3d 613, 619 (Tex. App.—Austin 2006, no pet.) (“The
foundation of . . . the supreme court’s analysis in Fodge was a pending claim whose resolution required a determination
of a claimant’s entitlement to workers’ compensation benefits.”).  Here, the Commission already determined that no
coverage exists.  Its jurisdiction does
not extend to resolving whether AMS was contractually required to purchase insurance
coverage for Sosa.  That issue is a
matter of contract interpretation, one ripe for a district court to
decide.         

          The dispute
resolution process set out in Chapter 410 of the Labor Code is designed to
resolve workers’ compensation benefits disputes between an insurance carrier
and a benefits claimant.  See HCBeck, Ltd. v. Rice, 284 S.W. 3d 349, 349 (Tex. 2009)
(“The purpose of the Texas Workers’ Compensation Act is to provide employees
with certainty that their medical bills and lost wages will be covered if they
are injured.”).  The Labor Code’s  lack of established procedures for resolving
disputes between parties other than a claimant and the insurance carrier
demonstrates that the Legislature did not intend to give the Commission
exclusive jurisdiction over disputes that do not directly or indirectly involve
a claimant, a carrier, or one seeking benefits through a claimant.  See Tex.
Mut. Ins. Co., 214 S.W.3d at 620 (holding that Legislature’s failure to
provide any procedures for resolving disputes regarding employer’s liability insurance
coverage demonstrated that Division did not have exclusive jurisdiction over
these disputes).  AMS relies on Morales, but that case is inapposite.  See
Morales, 241 S.W.3d at 515.  In Morales, the supreme court dealt with
the issue of venue, holding that employee status is an issue of compensability
under the statute for venue purposes.  Id.
at 517–19; see also Tex. Lab. Code Ann. § 410.252(b)(1)
(stating that appeals from Commission decisions regarding compensability or
benefit eligibility generally must be filed in county where employee resided at
time of injury or death).  In framing the
issue before it as one of venue, the supreme court in Morales explicitly rejected the notion that the issue under
consideration was one of subject-matter jurisdiction. See id. at 516 n.1
(“The court of appeals, the trial court, and the parties all treat the issue as
one of subject-matter jurisdiction, but we have held that it is not.”).

KHK could not assert the workers’
compensation bar against Sosa’s non-subscriber suit because AMS took the position
that Sosa was not its employee and that KHK had no workers’ compensation
coverage for him through AMS.  The
dispute here is whether AMS was obligated to obtain such coverage.  The Commission’s denial of KHK’s request for
a benefit conference after Sosa’s negligence trial demonstrates the Commission’s
lack of authority to resolve this contractual dispute between a staff leasing
company and its client company, where no claim to workers’ compensation
benefits exists.  See Del Indus. Inc., 35 S.W. 3d at 596.  The trial court, with its
presumptive jurisdiction, fills this gap. 
Accordingly, we hold that the trial court properly exercised
jurisdiction to adjudicate KHK’s claims, and it did not err when it refused
again to abate the matter for adjudication by the Commission.

BREACH OF CONTRACT—Legal Sufficiency  

          AMS asserts that no evidence exists to
support the jury’s finding that AMS breached its contract with KHK.  In addition to its affirmative finding that
AMS failed to comply with the agreement, the jury found that KHK’s previous
failure, if any, to comply with a material obligation of the same agreement did
not excuse AMS’s failure to comply with the agreement.  AMS moved for judgment notwithstanding the
verdict, contending that no evidence supported the jury’s finding that AMS had
breached the leasing agreement or that Sosa had been a leased employee.  The trial court denied the motion.      

Standard of Review  

          A trial court may disregard a jury’s
verdict and render a jnov if the evidence is legally insufficient to support
the jury’s findings or if a directed verdict would have been proper because a
legal principle precludes recovery.  Tex. R. Civ. Pro. 301; see Fort Bend Cnty Drainage Dist. v.
Sbrusch, 818 S.W.2d 392,
394 (Tex. 1991); Williams v. Briscoe, 137 S.W.3d 120, 124 (Tex. App.—Houston [1st Dist.] 2004, no
pet.); John Masek Corp. v. Davis,
848 S.W.2d 170, 173 (Tex. App.—Houston [1st Dist.] 1992, writ denied).  The test for legal sufficiency is “whether
the evidence at trial would enable reasonable and fair-minded people to reach
the verdict under review.”  City of
Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005).  In making
this determination, we credit favorable evidence if a reasonable fact-finder
could, and disregard contrary evidence unless a reasonable fact-finder could
not.  Id.  So long as the evidence falls within the zone
of reasonable disagreement, we may not substitute our judgment for that of the
fact-finder.  Id. at 822.  The fact-finder is the sole judge of the
credibility of the witnesses and the weight to give their testimony.  Id. at 819.  Although we consider the evidence in a light
most favorable to the challenged findings, indulging every reasonable inference
that supports them, we may not disregard evidence that allows only one
inference.  Id. at 822.

Applicable
Law 

To prevail on a breach of contract claim, a party must
establish that: (1) a valid contract existed between the plaintiff and the
defendant; (2) the plaintiff tendered performance or was excused from doing so;
(3) the defendant breached the terms of the contract; and (4) the plaintiff
sustained damages as a result of the defendant's breach.  See Valero Mktg. & Supply Co. v.
Kalama Int’l, 51 S.W.3d
345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.).  “A breach occurs when a party fails or
refuses to do something he has promised to do.” Dorsett v. Cross, 106 S.W.3d 213, 217 (Tex.
App.—Houston [1st Dist.] 2003, no pet.) (citing Townewest Homeowners Ass’n, Inc.
v. Warner Commc’n Inc., 826
S.W.2d 638, 640 (Tex. App.—Houston [14th Dist.] 1992, no writ)).

Analysis


          Under the leasing agreement, AMS
agreed to provide KHK with leased employees.  AMS further agreed to
“obtain and pay for Workers’ Compensation . . . Insurance” for these leased
employees.  In addition, AMS agreed to
indemnify KHK against all loss which KHK may incur as a result of an AMS
employee’s claim of occupational injury due to AMS’s breach of the
agreement.  The agreement does not define
“leased employee” or “AMS employee.”

          AMS urges that the
evidence proves a worker could not become its “leased employee” unless he
submitted an AMS employment application to AMS.  On the contrary, KHK adduced evidence at trial
that it designated a worker as a “leased employee” by reporting the worker on one
of the turnaround reports that KHK submitted weekly to AMS to generate payroll.  The evidence shows that other KHK workers
were undisputedly leased employees even though they had not submitted AMS
applications.  When the contracting
parties set forth their own definitions of the terms they employ, we are not at
liberty to disregard those definitions and substitute other meanings.  Healthcare
Cable Sys., Inc. v. Good Shepherd Hosp., Inc., 180 S.W.3d 787, 791 (Tex.
App.—Tyler 2005, no pet.).  Here, the
parties’ agreement does not define the term, “leased employee.”  Nor do any of the contractual provisions shed
light on its meaning.    

According to testimony presented at trial, it was
normal procedure and practice for KHK to designate a worker as a leased
employee by reporting the worker on a turnaround report.  During the work week before his injury, Sosa
worked twenty-four hours.  KHK reported
those hours in the turnaround report. 
AMS charged KHK a fee in part to cover AMS’s obligation to provide
workers’ compensation insurance for the employees, including Sosa, for that
work week, and KHK paid it.  AMS issued
Sosa a check for the hours he worked. 
For the work week of March 29 to April 4, the week of Sosa’s injury, KHK
again reported Sosa’s hours in a turnaround report.  AMS charged and received a fee to obtain
workers’ compensation coverage for the leased employees for that week. 
It issued Sosa a
check for that week.  Sosa was injured on
March 31.   We hold this evidence
supports the jury’s implied finding that Sosa was a “leased employee” of AMS
prior to, and on the date of, his injury. 
The agreement in force at the time of Sosa’s injury required AMS to
provide Sosa with workers’ compensation insurance and to cover KHK for any loss
resulting from Sosa’s injury due to its failure to purchase insurance.  AMS did not provide KHK with a workers’
compensation policy identifying KHK as an insured and stipulated that it could
not produce one.  We hold that the evidence is legally
sufficient to support the jury’s finding that AMS breached the leasing
agreement with KHK. 

          AMS also contends that KHK’s judgment
for breach of contract fails as a matter of law because the leasing agreement
does not require AMS to indemnify KHK for KHK’s own negligence or gross
negligence.  The leasing agreement
provides in relevant part:   

(b) AMS agrees to protect,
indemnify[,] and hold Client Company harmless against all loss, cost or expense
which Client Company may incur or sustain in connection with or in consequence
of any claim of occupational injury relating to AMS’s employee arising in any
manner out of or in any way connected with or a result of performance of this
subcontract, or breach thereof, or any activity caused by any negligent act or
omission on the part of AMS, no matter by whom or on whose behalf such claim,
demand, suit or action may be asserted or brought.

 

(c) Client Company agrees to
protect, indemnify[,] and hold AMS harmless against liability, expense . . .
and claims of any nature whatsoever, which AMS becomes legally obligated to pay
as a result of the acts, errors, or omissions of Client Company related
directly or indirectly to this Employee Leasing Agreement, including but not
limited to Client Company’s negligence, gross negligence or intentional acts or
omissions . . . .

 

We
agree with AMS that the leasing agreement does not require it to indemnify KHK
for KHK’s negligence and gross negligence. 
The agreement, however, requires that AMS indemnify KHK for any loss
caused by a claim of occupational injury suffered by a leased employee if the
loss was in any way connected with AMS’s failure to perform its obligations
under the agreement.  Here, AMS failed to
provide a workers’ compensation policy to Sosa, a leased employee.  As a result, KHK suffered a loss because it
was unable to invoke the exclusive remedy provision of the Texas Workers’ Compensation Act at the Sosa’s trial to bar his
suit.  See Tex. Lab.
Code Ann. § 408.001(a). 
Accordingly, we hold
that the jury’s finding of breach of contract based on AMS’s contractual duty
to indemnify KHK does not fail as a matter of law.  

AMS failed to provide workers’ compensation coverage for
Sosa and to indemnify for the loss related to his claim of occupational
injury.  This failure was a breach of its
contractual duties.  The parties
stipulated to causation and damages, and AMS raises no issue as to these elements
on appeal.  We uphold the trial court’s
breach-of-contract judgment.     

Contract Defenses

Waiver Defense 

Ams next
maintains that KHK waived its breach of contract claim that AMS failed to
purchase coverage for Sosa because KHK failed to obtain a jury finding in
Sosa’s negligence trial on whether a workers’ compensation insurance policy
covered him.  An employer who carries workers’
compensation insurance may assert, as an affirmative defense, that an employee’s
work-related injuries are compensable solely under the Workers’ Compensation
Act.  Pierce v. Holiday, 155 S.W.3d 676, 678 (Tex. App.—Texarkana
2005, no pet.).     

          Waiver is an affirmative defense to a
contract claim.  See Tex. R. Civ. P. 94.  In order to rely on the affirmative defense, a defendant
must plead, prove, and secure findings to sustain the defense.  Woods v. William H. Mercer, Inc., 769 S.W.2d 515, 517 (Tex. 1988).  The record does not reflect that AMS requested
a jury question on the defense it now seeks to assert.  By failing to do so, it has not preserved its argument
for appellate review.  See Tex. R. App. P. 33.1(a); Rivas v. Cantu, 37 S.W.3d 101, 116-17 (Tex. App.—Corpus
Christi 2000, pet. denied) (holding defendant failed to preserve statute of
frauds defense by, inter alia, failing to request jury charge or object
to absence of charge issue); Abraxas Petrolrolium Corp. v. Hornburg, 20 S.W.3d 741, 763 (Tex. App.—El
Paso 2000, no pet.) (holding defendant waived estoppel and waiver defenses by
failing to submit a jury question). 

Public Policy Defense 

AMS lastly contends that, after
Sosa’s negligence trial, Sosa and KHK entered into a collusive Mary Carter-type
agreement and assignment of rights, and this agreement and assignment fatally
tainted the later trial between AMS and KHK. 
According to AMS, the collusive agreement between Sosa and KHK poisoned
the jury’s understanding of the case and renders the contract judgment against
AMS void, as a matter of public policy.  

          A Mary Carter agreement exists when a
settling defendant retains a financial stake in the plaintiff's recovery and
remains a party at the trial of the case.  Elbaor v. Smith, 845 S.W.2d 240, 247 (Tex. 1992).  Under this definition, a plaintiff cannot secretly
settle with one defendant and go to trial against the remaining defendants, while
the settling defendant, who remains a party, guarantees the plaintiff a minimum
payment, which may be offset in whole or in part by an excess judgment
recovered at trial against the other defendants.  Id.  Such collusion creates an incentive for the settling
defendant to ensure that the plaintiff succeeds in obtaining a sizable
recovery, and thus motivates the defendant to assist in the plaintiff’s
presentation of the case.  Id.  But, “a Mary Carter agreement would not exist
if the settling defendant acquires a financial interest in the outcome of the
trial and then testifies as a non-party witness.”  Id. at
247 n.14. 

          Here, Sosa was not a party to the
trial between AMS and KHK.  Sosa sued KHK
and obtained a final judgment against KHK. Sosa also was not a settling
party.  After the trial court
entered final judgment against KHK, Sosa, at that point a judgment creditor,
filed an application for a turnover order of KHK’s claims against AMS up to the
amount of his judgment against KHK, as permitted by statute.  See Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (West 2008).  KHK opposed the turnover order.  The trial court granted it. AMS points to no evidence that would
raise any doubt that KHK and Sosa entered into any type of voluntary
settlement, agreement or assignment of rights. 
We hold that no evidence shows that an improper collusive agreement
existed in this case.  

Conclusion

          We
hold that the trial court had jurisdiction to hear KHK’s contract claims
against AMS, legally sufficient evidence supports the jury’s finding on breach
of contract,[2]
AMS did not preserve its claim of waiver for appeal, and no evidence exists of
a collu sive agreement between KHK and the injured worker.  We therefore affirm the judgment of the trial
court.  

 

 

 

                                                                   Jane
Bland

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Alcala and Bland.

 

 











[1]        Effective September 1, 2005, the former Texas Workers’
Compensation Commission was abolished and
its rules and duties were transferred to the         Texas
Department of Insurance, Division of Workers’ Compensation. See    Act of May 29, 2005, 79th Leg., R.S., ch. 265,
§§ 8.001(b), .004(a), 2005 Tex. Gen. Laws
607, 608.  We use “the Commission” to
refer to both.





[2]
          AMS
also challenges the fraud findings by the jury, contending that no    evidence exists
to support them.  Because we uphold
the breach of contract claim and the
trial court did not render a judgment on fraud, we need not    address this appellate challenge.